[No. B172056. Second Dist., Div. Six. Apr. 7, 2005.]

CALIFORNIA INSURANCE GUARANTEE ASSOCIATION, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and
AMERICAN MOTORISTS INSURANCE COMPANY, Respondents.

308

**COUNSEL**

Guilford Steiner Sarvas & Carbonara, Richard E. Guilford; Stockwell, Harris, Widom & Woolverton and Jeffrey T. Landres for Petitioner.

No appearance for Respondent Workers' Compensation Appeals Board.

Gray & Prouty and Kathleen L. Wilson for Respondent American Motorists Insurance Company.

**OPINION**

**PERREN, J.**—A workers' compensation insurer that pays a claim for which other insurers are partially responsible generally can seek contribution from those insurers. The issue we decide is whether the rule applies when one of the insurers becomes insolvent and the California Insurance Guarantee Association (CIGA) steps in.

CIGA seeks review of an order of the Workers' Compensation Appeals Board (WCAB), ordering it to reimburse a solvent insurer for a portion of temporary disability and medical benefits paid to an injured employee. We annul and remand.

*FACTS*

Timothy Weitzman sustained a specific low back injury on February 12, 1997, while employed by Capstar Hotels, insured by American Motorists Insurance Company (AMIC). On January 30, 1998, he resolved his workers'

compensation claim by entering into a stipulation with Capstar/AMIC. The stipulation provided temporary disability, 14.75 percent permanent disability and payment of medical liens.

On September 26, 2001, Weitzman filed a petition to reopen the award, alleging that his disability had increased and that he was entitled to additional benefits. At the same time, Weitzman filed two new workers' compensation claims for low back injuries. He alleged a specific injury sustained on February 10, 1998, while employed by Cal Poly Foundation, which was insured by California Compensation Insurance (Cal Comp), and a cumulative trauma injury over the period September 7, 1999, to March 30, 2001, while employed by Cal Poly Foundation, then insured by Legion Insurance.

In 2000, Cal Comp became insolvent, and, on April 25, 2003, Legion became insolvent. CIGA assumed liability for both insurers' "covered claims" pursuant to Insurance Code section 1063.1.[1] On July 1, 2003, AMIC filed a request for allowance of lien against CIGA in the amount of $133, 800 for medical expenses, temporary disability and permanent disability it had paid as a result of the two later injuries.

The three cases were consolidated for hearing. On October 3, 2003, the workers' compensation judge (WCJ) issued findings and award and order granting the petition to reopen, increasing Weitzman's permanent disability rating to 55 percent and awarding future medical treatment. The WCJ also issued joint findings and award and order for the two injuries Weitzman sustained while working for Cal Poly. The WCJ awarded permanent disability of 55 percent and future medical treatment for these injuries. The WCJ also ordered that AMIC administer Weitzman's future medical benefits. The order allowed the AMIC lien, in effect giving AMIC a right of reimbursement against CIGA for past and future medical care attributable to the injuries occurring during the periods of coverage by the insolvent insurers.

In his opinion on decision, the WCJ explained that he gave identical awards for all three injuries because the "former injury, in part, contributed to his subsequent need of medical treatment and temporary disability" and "the subsequent injuries . . . contributed, in part, to applicant's need for medical treatment and temporary disability."

CIGA's petition for reconsideration was denied by the WCAB, which adopted the WCJ's report on reconsideration as its own without further comment. The WCJ's report on reconsideration states in part: "With all due respect to petitioner, the undersigned does not believe this is a case under

---

[1] All statutory references are to the Insurance Code unless otherwise specified.

Insurance Code Section 1063.1, that there is 'other insurance.' Applicant has sustained several industrial injuries. Each of which contributed to applicant's past need of medical care and will contribute to his future need of medical care. Petitioner has not contended that applicant is not in need of future medical care as a result of [his] injury. This is simply a case of administration of multiple awards and the allowance of care for treatment that was partially caused by defendant's injuries. It is not other insurance. Simply put, there is no other insurance for these injuries. [¶] . . . [¶] In the undersigned's opinion, petitioner is liable for that portion of the applicant's past medical care and future medical care that is appropriately allocated to its liabilities in the case." In other words, CIGA was liable to AMIC for the obligations of the defunct carriers.

CIGA petitioned this court for a writ of review on the ground that the reimbursement ordered by the WCAB is precluded by section 1063.1, subdivision (c)(5) and (9). We originally denied the petition by a two-to-one vote on July 7, 2004. The Supreme Court granted CIGA's ensuing petition for review and transferred the matter to us with directions to vacate our order and issue a writ of review.

## DISCUSSION

■ Where, as here, the facts are undisputed, final responsibility for interpreting a statute rests with the court. (*Moulton v. Workers' Comp. Appeals Bd.* (2000) 84 Cal.App.4th 837, 842 [101 Cal.Rptr.2d 175].) We apply the usual rules of statutory interpretation. The fundamental rule is to ascertain the intent of the Legislature in order to effectuate the purpose of the law. In doing so, we first look to the words of the statute and try to give effect to the usual, ordinary import of the language. (*California Ins. Guarantee Assn. v. Workers' Comp. Appeals Bd.* (2004) 117 Cal.App.4th 350, 355 [12 Cal.Rptr.3d 12].) It is a settled principle in California law that when statutory language is clear and unambiguous there is no need for construction, and courts should not indulge in it. (*Ibid.*)

■ CIGA was created by the Legislature to establish a fund from which insureds could obtain financial and legal assistance if their insurers became insolvent. (*Isaacson v. California Ins. Guarantee Assn.* (1988) 44 Cal.3d 775, 784 [244 Cal.Rptr. 655, 750 P.2d 297].) CIGA " 'was created to provide a limited form of protection for insureds and the public, not to provide a fund to protect insurance carriers.' . . . CIGA's role in guaranteeing workers' compensation claims is therefore limited: [¶] ' "CIGA is not, and was not created to act as, an ordinary insurance company. . . . It is a statutory entity that depends on the Guarantee Act for its existence and for a definition of the scope of its powers, duties, and protections." . . . "CIGA issues no policies,

collects no premiums, makes no profits, and assumes no contractual obligations to the insureds.". . . "CIGA's duties are not co-extensive with the duties owed by the insolvent insurer under its policy." ' " (*Denny's Inc. v. Workers' Comp. Appeals Bd.* (2003) 104 Cal.App.4th 1433, 1438 [129 Cal.Rptr.2d 53], citations omitted.)

■ CIGA's authority and liability are limited to paying " 'covered claims.' " (*Isaacson v. California Ins. Guarantee Assn., supra,* 44 Cal.3d at p. 786; *California Ins. Guarantee Assn. v. Workers' Comp. Appeals Bd.* (2003) 112 Cal.App.4th 358, 363–364 [5 Cal.Rptr.3d 127].) Section 1063.1, subdivision (c)(1) defines " 'covered claims' " as "the obligations of an insolvent insurer," including the obligation "to provide workers' compensation benefits under the workers' compensation law of this state." (*Id.*, subd. (c)(1)(vi).) The statute enumerates in subdivision (c)(3) through (12) specific types of claims that are not "covered claims."

*Section 1063.1, subdivision (c)(5) and (9)(ii)*

CIGA argues that in section 1063.1, subdivision (c)(5) and (9)(i) and (ii), the Legislature made clear that CIGA is not responsible for reimbursing solvent insurers where, as here, the solvent insurer paid workers' compensation benefits due to injuries sustained during periods of coverage by the insolvent insurers. We agree.

Section 1063.1, subdivision (c)(5) provides: " 'Covered claims' does not include any obligations to insurers, insurance pools, or underwriting associations, nor their claims for contribution, indemnity, or subrogation, equitable or otherwise, except as otherwise provided in this chapter."

Section 1063.1, subdivision (c)(9)(ii) provides: " 'Covered claims' does not include . . . any claim by any person other than the original claimant under the insurance policy in his or her own name . . . and does not include any claim asserted by an assignee or one claiming by right of subrogation, except as otherwise provided in this chapter."

Numerous cases hold that CIGA has no liability for claims made by other insurers in contexts other than those involving workers' compensation benefits. In *California Union Ins. Co. v. Central National Ins. Co.* (1981) 117 Cal.App.3d 729 [173 Cal.Rptr. 35], the court construed the provisions at issue here against insurance companies seeking recovery from CIGA for a portion of a legal malpractice judgment. In concluding that the language of the statute is clear and unambiguous, the court stated: "Appellants are insurers and the claims they seek are 'obligations to insurers.' (§ 1063.1, subd. (c)(4) [now subd. (c)(5)].) Appellants are not 'the original claimant under the insurance

policy in his own name.' (§ 1063.1, subd. (c)(7) [now subd. (c)(9)].) Appellants claim an equitable right of subrogation and the statute is clear that covered claims 'shall not include any claim asserted by an assignee or one claiming by right of subrogation, except as otherwise provided in this chapter.' (§ 1063.1, subd. (c)(7) [now subd. (c)(9)].)" (*Id.* at p. 733.)

In *E.L. White, Inc. v. City of Huntington Beach* (1982) 138 Cal.App.3d 366 [187 Cal.Rptr. 879], White and the city were unsuccessful codefendants in an action for wrongful death and a related personal injury action. White's insurer paid half the judgment and sued the city for indemnity. The city's insurer then became insolvent. CIGA sued White's insurer, seeking a declaration that it could not proceed with its indemnity action. The trial court agreed with CIGA. The appellate court affirmed. It concluded CIGA was forbidden by statute from standing in the shoes of the insolvent insurer because the claim was both by an insurer and a claim by right of subrogation. Accordingly, the insurer could not seek payment from CIGA. "Such is the clear and unambiguous language of the statute." (*Id.* at p. 371; accord, *Collins-Pine Co. v. Tubbs Cordage Co.* (1990) 221 Cal.App.3d 882 [271 Cal.Rptr. 20].)

In *Central National Ins. Co. v. California Ins. Guarantee Assn.* (1985) 165 Cal.App.3d 453 [211 Cal.Rptr. 435], the court rejected an insurer's claim against CIGA for an insolvent insurer's contribution to a legal malpractice judgment. The court said: "The statute excludes from 'covered claims' any obligations to insurers or any claim asserted by an assignee or one claiming by right of subrogation. (§ 1063.1, subd. (c)(4), and § 1063.1, subd. (c)(7)(b).) Applying both the case law and the plain meaning of the statutory language, Central National, a solvent insurance carrier, falls clearly in the excluded class and cannot directly nor indirectly through assignment or subrogation be found to be one with a covered claim payable by CIGA." (*Id.* at p. 459; see also *Baxter Healthcare Corp. v. California Ins. Guarantee Assn.* (2000) 85 Cal.App.4th 306, 312 [102 Cal.Rptr.2d 87] ["Even if appellants come within the definition of a 'claimant' pursuant to section 1063.1, subdivision (g), they do not survive the legislative choice that they are not 'original claimants' pursuant to section 1063.1, subdivision (c)(9)"]; and see *Black Diamond Asphalt, Inc. v. Superior Court* (2003) 114 Cal.App.4th 109, 120 [7 Cal.Rptr.3d 466] ["Under the unambiguous language of the statutory scheme, an original claimant can be any person (other than the insurer) instituting a liability claim within the coverage of the policy, provided that he or she does so in his or her own name and not through assignment or by right of subrogation"].)

In *California Ins. Guarantee Assn. v. Argonaut Ins. Co.* (1991) 227 Cal.App.3d 624 [278 Cal.Rptr. 23] (*Argonaut*), the court held that CIGA, involved because of the insolvency of a third party tortfeasor's insurer, was

not responsible for reimbursing a solvent workers' compensation carrier for benefits paid because section 1063.1 provides that claims by right of subrogation are not "covered claims." The court said: "We find the language of . . . subdivision (c)(4) excluding claims of insurers and that of subdivision [(c)](9) excluding claims by right of subrogation to be clear and unambiguous. We need not construe the statute; its meaning is clear—a claim by an insurer or a claim by right of subrogation is not a 'covered claim.' " (*Argonaut*, at p. 633.)

The *Argonaut* court explained: "As currently written, Insurance Code section 1063.1 does not permit CIGA to reimburse Argonaut for amounts Argonaut paid . . . in workers' compensation benefits. Subdivision (c)(4) [now subdivision (c)(5)] . . . excludes obligations to insurers from the category of 'covered claims.' Subdivision (c)(9)(ii) . . . excludes claims made by right of subrogation. Although denying subrogation to a workers' compensation carrier may result in an increased financial burden on the workers' compensation system, this result does not justify ignoring the clear language of the statute. Denying subrogation recovery from CIGA may result in some increased insurance costs, some of which would be borne by the insured public. Permitting subrogation recovery from CIGA would result in some increased insurance costs to the involuntary members of CIGA, which costs may also be passed on in part to the insured public. The Legislature has balanced these competing concerns for protecting the insured public in the creation and statutory duties of CIGA. We shall not take it upon ourselves to change the balance." (*Argonaut, supra*, 227 Cal.App.3d at p. 636.)

The two appellate cases holding CIGA liable for a claim made by an insurer are of little precedential value. The decision in *Phoenix Insurance Co. v. United States Fire Ins. Co.* (1987) 189 Cal.App.3d 1511 [235 Cal.Rptr. 185], led to a statutory amendment precluding such claim. In that case, Phoenix, a solvent insurer, was given a reimbursement right against CIGA based on the equitable principle of indemnification. At the time the case was decided, nothing in section 1063.1 excluded indemnification claims from the definition of a "covered claim." The following year, however, the Legislature amended section 1063.1, subdivision (c)(4) (now subdivision (c)(5)), excluding from covered claims a claim by an insurer for "contribution, indemnity or subrogation, equitable or otherwise."

In *Burrow v. Pike* (1987) 190 Cal.App.3d 384 [235 Cal.Rptr. 408], the court held that no language in the statutes governing CIGA's liability precluded a workers' compensation carrier's subrogation claim. The court held that the meaning evident on the face of the statute should not prevail because there was a fundamental policy difference between workers' compensation insurance and other types of insurance. In allowing the claim, the court

concluded reimbursement for workers' compensation benefits differed from the traditional action for subrogation.

In declining to follow *Burrow*, the *Argonaut* court said: "The *Burrow* court goes beyond construing or interpreting the statute; it rewrites Insurance Code section 1063.1 based on its perception that the statute as written overlooks an important policy consideration. Crafting statutes to conform with policy considerations is a job for the Legislature, not the courts; our role is to interpret statutes, not to write them. [Citation.] [¶] The *Burrow* court suggests that if the Legislature intends reimbursement for workers' compensation to be excluded from the definition of covered claims, it can say so. By excluding claims from insurers and claims by right of subrogation the Legislature has done just that." (*Argonaut, supra,* 227 Cal.App.3d at pp. 633–634; and see *Roth v. L.A. Door Co.* (2004) 115 Cal.App.4th 1249 [10 Cal.Rptr.3d 1] [court follows *Argonaut* rather than *Burrow*].) We agree.

■ The plain language of section 1063.1, subdivision (c)(5) and (9)(ii) bars AMIC's reimbursement claim because the claim is an "obligation[] to an insurer," AMIC is not the "original claimant under the insurance policy," and the two subsections expressly exclude "claims for contribution, indemnity, or subrogation, equitable or otherwise" and "one claiming by right of subrogation." We have been presented with no persuasive authority and know of no reason for treating reimbursement claims for workers' compensation benefits differently than claims made in other civil cases. Where, as here, the statutory language is clear and unambiguous, its plain meaning must prevail. (*Honeywell v. Workers' Comp. Appeals Bd.* (2005) 35 Cal.4th 24, 34 [24 Cal.Rptr.3d 179, 105 P.3d 544].)[2]

Moreover, as CIGA points out, section 1063.1 contains several specific references to workers' compensation insurance (§§ 1063.1, subd. (c)(1)(vi), (7), (8), 1063.15) demonstrating that, if the Legislature had wanted to make an exception for workers' compensation claims from the subdivision (c)(5) exclusion, it could and would have said so. (See *Argonaut, supra,* 227 Cal.App.3d at p. 634 ["In our view, if the Legislature views workers' compensation as significantly different from other insurance so as to necessitate different treatment in recovering claims from CIGA, the Legislature can say so. Insurance Code section 1063.1 shows that the Legislature knew how to make an exception for workers' compensation benefits when it so intended." (Fn. omitted.)].)

---

[2] We have not discussed any arguments made by AMIC because its brief contains no argument concerning subdivision (c)(5) or (9)(ii). (See *County of Butte v. Bach* (1985) 172 Cal.App.3d 848, 867 [218 Cal.Rptr. 613] [contention raised in appellant's brief to which respondent makes no reply in its brief will be deemed submitted on appellant's brief].)

*Section 1063.1, subdivision (c)(9)(i)*

Although we believe our construction of subdivision (c)(5) and (9)(ii) resolves the issue, we interpret subdivision (c)(9)(i) of section 1063.1 as well. This provision is at issue in numerous other pending cases and is the subject of a recent en banc opinion by the WCAB, *Gomez v. Casa Sandoval* (2003) 68 Cal.Comp.Cases 753 (*Gomez*), with which we disagree.

Section 1063.1, subdivision (c)(9)(i) provides: " 'Covered claims' does not include . . . any claim to the extent it is covered by any other insurance of a class covered by this article available to the claimant or insured."

AMIC argues that there is no "other insurance" for the medical benefits paid because it was not on the risk for the two later injuries. In support of its argument, AMIC cites Labor Code sections 3208.2 and 5303 and the WCAB's en banc opinion in *Gomez, supra*, 68 Cal.Comp.Cases 753. In *Gomez*, the WCAB held that in successive injury cases an apportionment of liability must be made by the WCAB, setting the specific percentage of liability of all carriers, which will also set CIGA's liability for any now-insolvent carrier.

In *Gomez*, the WCAB relied on Labor Code sections 3208.2[3] and 5303,[4] prohibiting merger of multiple injuries and requiring separate findings of fact and awards for each separate injury. The WCAB reasoned: "The requirement of separate findings of fact for each injury supports the conclusion that between or among successive injuries, there is no 'other insurance . . . available to the claimant or insured' under Insurance Code section 1063.1(c)(9). In successive injury cases, the liability is not joint and several among or between carriers, but rather, awards are made for the convenience of the applicant, with a single carrier to provide benefits subject to subsequent apportionment of liability, as required by Labor Code sections 3208.2 and 5303. The result is no different where CIGA has been joined on behalf of an insolvent carrier. [¶] This approach is required because case law has established that section 3208.2 is concerned with the sharing of loss by employers,

---

[3] Labor Code section 3208.2 provides: "When disability, need for medical treatment, or death results from the combined effects of two or more injuries, either specific, cumulative, or both, all questions of fact and law shall be separately determined with respect to each such injury, including, but not limited to, the apportionment between such injuries of liability for disability benefits, the cost of medical treatment, and any death benefit."

[4] Labor Code section 5303 provides in relevant part: "There is but one cause of action for each injury coming within the provisions of this division. . . . [N]o injury, whether specific or cumulative, shall, for any purpose whatsoever, merge into or form a part of another injury; nor shall any award based on a cumulative injury include disability caused by any specific injury or by any other cumulative injury causing or contributing to the existing disability, need for medical treatment or death."

and not with the apportionment of benefits between the employer and the injured worker." (*Gomez, supra,* 68 Cal.Comp.Cases at p. 760.)

■ It is well established that contemporaneous construction of a statute by the agency charged with its enforcement and interpretation, while not necessarily controlling, is of great weight, and courts will not depart from such construction unless it is clearly erroneous or unauthorized. (*Griffith v. Workers' Comp. Appeals Bd.* (1989) 209 Cal.App.3d 1260, 1263–1264 [257 Cal.Rptr. 813]; *Industrial Indemnity Co. v. Workers' Comp. Appeals Bd.* (1985) 165 Cal.App.3d 633, 638 [211 Cal.Rptr. 683].)

■ We conclude, however, that *Gomez* was incorrectly decided on this point. In *Buhlert Trucking v. Workers' Comp. Appeals Bd.* (1988) 199 Cal.App.3d 1530 [247 Cal.Rptr. 190], the court held that Labor Code section 4600 imposed joint and several liability on an employer for the full award of costs of future medical treatment to an employee injured in the course of his employment where the need for such medical treatment is partially attributable to a previous industrial injury. "The duty imposed by section 4600 upon an employer is joint and several, subject only to the right of contribution as between employers. [Citations.] [¶] . . . [T]here is nothing in section 4600 or . . . elsewhere in the 'complete' workers' compensation statutory system to preclude its application to medical treatment, whether present or future, arising from the combined effects of present and preexisting industrial injuries." (*Buhlert,* at pp. 1534–1535.) Thus, once it has been established that an industrial injury contributed to an employee's need for medical treatment, employer-provided medical treatment is mandated by Labor Code section 4600.

The *Buhlert* court's analysis was followed in *Industrial Indemnity Co. v. Workers' Comp. Appeals Bd.* (1997) 60 Cal.App.4th 548 [70 Cal.Rptr.2d 295] (*Garcia*). In that case, Garcia sustained a cumulative injury. During the period of injury, his employer was insured by three successive workers' compensation insurers. Before trial on the claim, one of the insurers became insolvent. CIGA entered the litigation due to the insolvency and sought dismissal from the case on the ground that Garcia's claim did not constitute a "covered claim" under section 1063.1, subdivision (c)(9), because "other" workers' compensation insurance was available through solvent insurers who were jointly and severally liable.

The Court of Appeal held that CIGA was not liable since all insurance carriers during the period of exposure were jointly and severally liable for benefits to an employee for cumulative trauma. The court concluded: "In sum, Garcia's employer and more than one solvent carrier were found liable for Garcia's single cumulative injury. Each such carrier was obligated to

discharge fully the employer's liability to Garcia for his entire disability during the cumulative injury period. Hence, the Board properly ordered a joint and several award against [the solvent insurers]." (*Garcia, supra,* 60 Cal.App.4th at p. 556.)

The *Garcia* court rejected the insurers' argument that there was no "other insurance" available because each of the insurance policies provided coverage during different time periods that did not overlap with the period covered by the insolvent carrier. The court stated:

"Reasonably read, the statute indicates that a claim does not rise to the level of a 'covered claim' where other insurance providing the required coverage is available to either the claimant or the insured. Here, solvent insurers . . . provided coverage to Garcia's employer during the liability period for cumulative injury prescribed in Labor Code section 5500.5, subdivision (a). Garcia proved his cumulative injury against his employer, [and the solvent insurers]. Hence, even though Garcia's employer's three workers' compensation policies did not overlap chronologically, [the solvent insurers] were jointly and severally liable to Garcia for his entire disability during the statutory liability period. . . . Since such 'other insurance' provided by [the solvent insurers] was thus available to cover Garcia's benefit award, CIGA was statutorily prohibited from making any payment toward his award. . . .

"In sum, the Legislature did not intend CIGA to defray or diminish the responsibility of other carriers. Instead, the Legislature intended CIGA to benefit claimants otherwise unable to obtain insurance in payment of their claims. Here, insurance other than insolvent [insurer's] policy was available to satisfy the employer's liability to Garcia, to wit, the policies of solvent carriers . . . . Garcia had the substantive right to collect his entire benefit award from [the solvent insurers] since each was jointly and severally liable. Since Garcia's benefits claim was fully protected by solvent insurers . . . , both Garcia and his employer had 'other insurance' available within the meaning of Insurance Code section 1063.1, subdivision (c). . . ." (*Garcia, supra,* 60 Cal.App.4th at pp. 558–559, citations omitted.)

"We note that if Garcia had elected to proceed only against [one of the solvent insurers] and succeeded in proving his cumulative injury, he would have received an award for all his benefits and [the solvent insurer] would have been obligated to pay the entire award. Although [the solvent insurer] would have had the right to institute supplemental proceedings against other carriers for contribution (Lab. Code, § 5500.5, subds. (c) & (e)), such proceedings would not lie against CIGA due to Insurance Code section 1063.1, subdivision (c)(4) [now subd. (c)(5)]." (*Garcia, supra,* 60

Cal.App.4th at p. 559, fn. 8; accord, *Denny's Inc. v. Workers' Comp. Appeals Bd., supra,* 104 Cal.App.4th 1433.)

■ Because Labor Code section 4600 imposes joint and several liability on employers in successive injury cases, there is "other insurance" available within the meaning of section 1063.1, subdivision (c)(9)(i), notwithstanding Labor Code sections 3208.2 and 5303.

## CONCLUSION

The WCAB erred in ordering CIGA to reimburse AMIC. Each of the three section 1063.1 exclusions discussed in this opinion is a separate and independent bar to AMIC's reimbursement claim for past and future medical benefits and temporary disability. The WCAB's order is annulled. We remand with instructions to respondent WCAB to vacate its order and issue a new order denying AMIC's lien claim.

Gilbert, P. J., and Coffee, J., concurred.

On April 21, 2005, the opinion was modified to read as printed above. The petition of respondent American Motorists Insurance Company for review by the Supreme Court was denied July 27, 2005.