[No. A111726. First Dist., Div. Three. Aug. 7, 2006.]

PARKWOODS COMMUNITY ASSOCIATION, Plaintiff and Respondent, v. CALIFORNIA INSURANCE GUARANTEE ASSOCIATION, Defendant and Appellant.

## COUNSEL

Law Offices of Adrienne D. Cohen, Adrienne D. Cohen, Kimberly J. Sarni and Julie Taylor for Defendant and Appellant.

Angius & Terry and Daniel E. Angius for Plaintiff and Respondent.

## OPINION

**POLLAK, J.**—This action was brought by plaintiff Parkwoods Community Association (Parkwoods) following the settlement of its earlier construction defect action arising out of the construction of the Parkwoods condominium development in Oakland. Five of the subcontractor defendants in the earlier action (the Reliance Insureds) were insured by Reliance Insurance Company (Reliance), a Pennsylvania insurance company that was placed into liquidation, causing defendant California Insurance Guarantee Association (CIGA) to assume their defense. The prior action was resolved by a settlement in which the developer and general contractor paid Parkwoods an amount that exhausted their primary commercial general liability (CGL) coverage and included a contribution from their excess insurance carrier that did not exhaust the excess insurance limits. Parkwoods and CIGA agreed upon the amount that CIGA would pay Parkwoods if CIGA is required to pay the obligations of Reliance and the Reliance Insureds, and agreed that this declaratory relief action would be brought to resolve their dispute as to whether Parkwoods's claim is a "covered claim" within the meaning of Insurance Code section 1063.1, subdivision (c)[1] that CIGA is obligated to pay. CIGA contends that it is not a "covered claim" because there was other insurance that did cover the claim, namely the excess policy of the developer and the general contractor. Parkwoods argues, and the trial court held, that the excess policy covering the liability of these other parties does not constitute "other insurance" for this purpose, so that judgment was entered requiring CIGA to pay the disputed amount. We disagree and shall reverse the judgment.

---

[1] All statutory references are to the Insurance Code unless otherwise indicated.

## Relevant Facts

This matter was resolved below on the basis of a stipulated statement of facts and cross motions for summary judgment. It was agreed that the Reliance Insureds and the developer and general contractor were jointly and severally liable to Parkwoods "as to those aspects of the defective construction that the Reliance Insureds were responsible for," and that under their subcontract agreements each of the Reliance Insureds agreed to fully indemnify the developer and general contractor under "Type I" indemnity agreements[2] "to the fullest extent allowed under California law."

Prior to the entry of the settlement agreement between Parkwoods and the developer and the general contractor, CIGA advised Parkwoods of its position that it was not obligated to, and would not, contribute to any settlement, for the reasons that it continues to assert in the present litigation. Parkwoods proceeded to enter the settlement agreement in which the payments on behalf of the developer and general contractor exhausted their CGL coverage for this loss. "In addition," it was stipulated, "while the general contractor and developer's excess insurance policy paid out settlement monies to resolve this loss, . . . such excess insurance limits were not exhausted as a result of the settlements reached with" the other parties, and the unexhausted excess policy limits exceeded $925,000, which is the amount the parties agreed CIGA is responsible to pay on behalf of the Reliance Insureds if the claim is a "covered claim." The settlement agreement between Parkwoods and the other parties was approved as a good faith settlement under Code of Civil Procedure section 877.6 in an order that provided that "any further claims by any other joint tortfeasor or co-obligor against Settling Parties for contribution and/or equitable comparative indemnity, based upon comparative negligence or comparative fault, in conjunction with any past, present or future claims or damages arising out of the facts in the above-entitled case shall be forever barred."

## Analysis

■ "CIGA was created by the Legislature to establish a fund from which insureds could obtain financial and legal assistance if their insurers became insolvent. [Citation.] CIGA ' "was created to provide a limited form of protection for insureds and the public, not to provide a fund to protect

---

[2] A "Type I" agreement "provides 'expressly and unequivocally' that the indemnitor is to indemnify the indemnitee for, among other things, the negligence of the indemnitee. Under this type of provision, the indemnitee is indemnified whether his liability has arisen as the result of his negligence alone [citation], or whether his liability has arisen as the result of his co-negligence with the indemnitor [citation]." (*MacDonald & Kruse, Inc. v. San Jose Steel Co.* (1972) 29 Cal.App.3d 413, 419 [105 Cal.Rptr. 725].)

insurance carriers." . . . " 'CIGA is not, and was not created to act as, an ordinary insurance company. . . . It is a statutory entity that depends on the Guarantee Act for its existence and for a definition of the scope of its powers, duties, and protections.' . . . 'CIGA issues no policies, collects no premiums, makes no profits, and assumes no contractual obligations to the insureds.' . . . 'CIGA's duties are not co-extensive with the duties owed by the insolvent insurer under its policy.' " ' [Citation.] [¶] CIGA's authority and liability are limited to paying ' "covered claims." ' " (*California Ins. Guarantee Assn. v. Workers' Comp. Appeals Bd.* (2005) 128 Cal.App.4th 307, 312–313 [26 Cal.Rptr.3d 845] (*WCAB*).)

■ The governing statute defines "covered claims" to mean "the obligations of an insolvent insurer . . . (i) imposed by law and within the coverage of an insurance policy of the insolvent insurer; (ii) which were unpaid by the insolvent insurer; (iii) which are presented as a claim to the liquidator in this state or to [CIGA] . . . ; . . . (v) for which the assets of the insolvent insurer are insufficient to discharge in full" and which satisfy certain other requirements. (§ 1063.1, subd. (c)(1).) However, the statute also specifies numerous types of claims that are not "covered claims." (§ 1063.1, subd. (c)(3)–(12).) CIGA relies on one such provision, section 1063.1, subdivision (c)(9), which provides in relevant part, " 'Covered claims' does not include (i) any claim to the extent it is covered by any other insurance of a class covered by this article available to the claimant or insured . . . ."

CIGA contends that the excess insurance policy of the developer and the contractor provided other insurance that was available to Parkwoods, so that its claim against CIGA is not covered. While it is true, as the trial court noted in rejecting CIGA's contention, that "the Reliance Insureds did not purchase the excess insurance, have no contractual right to coverage under the developer's policy, and were not additional insureds under that policy," those facts are not dispositive. The issue under section 1063.1, subdivision (c)(9)(i) is whether there is any other insurance[3] that is *"available to the claimant* or insured."* The excess coverage may not have been available to the Reliance Insureds (the insured) for the reasons noted by the trial court, but it was available to Parkwoods (the claimant). Since the parties stipulated that the developer and contractor were jointly and severally liable to Parkwoods for all construction defects for which the Reliance Insureds were responsible, the coverage provided by the unexhausted excess coverage policy was available to satisfy Parkwoods's claim.

While the trial court felt there was no "California case holding that the insurance policy of a *third party* is other insurance within the ambit of Section

---

[3] There is no dispute that the excess coverage policy of the developer and contractor is of the same class as the Reliance policy.

1063 (c)(9)(i) [*sic*]," the decision in *WCAB*, *supra*, 128 Cal.App.4th 307, is directly on point. In *WCAB*, a worker suffered three successive back injuries while employed by two different employers, resulting in identical compensation awards for each of the injuries. The workers' compensation insurer of the first employer paid the full benefits awarded to the worker and sought reimbursement from CIGA of the proportionate amount for which insolvent insurers of the second employer were responsible. The Court of Appeal held that the first insurer's claim was not a covered claim under subdivision (c)(5) and (9)(ii) of section 1063.1, which exclude obligations to other insurers and assignees and claims for contribution and indemnity (*WCAB*, *supra*, at pp. 313–316), and that it also was not a covered claim by reason of subdivision (c)(9)(i). The *WCAB* court relied on the decision in *Industrial Indemnity Co. v. Workers' Comp. Appeals Bd.* (1997) 60 Cal.App.4th 548 [70 Cal.Rptr.2d 295] (*Garcia*), in which the court "held that CIGA was not liable [to pay an injured worker's claim on behalf of an insolvent insurer where there were two other successive insurers that were solvent] since all insurance carriers during the period of exposure were jointly and severally liable for benefits to an employee for cumulative trauma." (*WCAB*, *supra*, at p. 318.)

█ The court in *WCAB* quoted at length from *Garcia*: " 'Reasonably read, the statute indicates that a claim does not rise to the level of a "covered claim" where other insurance providing the required coverage is available to either the claimant or the insured. Here, solvent insurers . . . provided coverage to Garcia's employer during the period for cumulative injury . . . . Garcia proved his cumulative injury against his employer, [and the solvent insurers]. Hence, even though Garcia's employer's three workers' compensation policies did not overlap chronologically, [the solvent insurers] were jointly and severally liable to Garcia for his entire disability during the statutory liability period. . . . Since such "other insurance" provided by [the solvent insurers] was thus available to cover Garcia's benefit award, CIGA was statutorily prohibited from making any payment toward his award. . . . [¶] 'In sum, the Legislature did not intend CIGA to defray or diminish the responsibility of other carriers. Instead, the Legislature intended CIGA to benefit claimants otherwise unable to obtain insurance in payment of their claims. Here, insurance other than insolvent [insurer's] policy was available to satisfy the employer's liability to Garcia, to wit, the policies of solvent carriers . . . . Garcia had the substantive right to collect his entire benefit award from [the solvent insurers] since each was jointly and severally liable. Since Garcia's benefits claim was fully protected by solvent insurers . . . , both Garcia and his employer had "other insurance" available within the meaning of Insurance Code section 1063.1, subdivision (c). . . .' (*Garcia*, *supra*, 60 Cal.App.4th at pp. 558–559, citations omitted.)" (*WCAB*, *supra*, 128 Cal.App.4th at p. 319.) Hence, the court concluded in *WCAB* that, since the first employer was jointly and severally liable for the successive injuries for

which the second employer was responsible, the first employer's policy provided "other insurance" that was available to the claimant within the meaning of section 1063.1, subdivision (c)(9)(i), even though the solvent insurer provided coverage for only the first employer. (*WCAB, supra,* at p. 320.)

The trial court in the present case was also influenced by the fact that under the terms of the good faith settlement, if CIGA is not obligated to pay the $925,000 owed by the Reliance Insureds, Parkwoods will be unable to recover that amount from anyone. The trial court considered this to be outside the purpose of section 1063.1, subdivision (c)(9)(i)—"to prevent a person from twice receiving benefits for the same loss" (*CD Investment Co. v. California Ins. Guarantee Assn.* (2000) 84 Cal.App.4th 1410, 1427 [101 Cal.Rptr.2d 806])—since "there is no threat of a double recovery from the developer's excess insurance policy." But Parkwoods brought this predicament upon itself by settling with the developer and contractor, who were jointly and severally liable for all damages caused by the Reliance Insureds, with full knowledge of CIGA's position. Parkwoods cannot bootstrap its claim against CIGA by releasing its right to recover under an available policy and claiming that as a result there is no other coverage.

Since there was joint and several liability and the Reliance Insureds agreed to indemnify the developer and contractor for all losses sustained by Parkwoods, Parkwoods could have sued only the developer and contractor, leaving them to obtain indemnity from the Reliance Insureds and Reliance. However, upon Reliance's insolvency, neither the developer and contractor nor their insurers were entitled to obtain indemnity or contribution from CIGA. (§ 1063.1, subd. (c)(5), (9)(ii).) As the court noted in *Garcia,* "if Garcia had elected to proceed only against [one of the solvent insurers] and succeeded in proving his cumulative injury, he would have received an award for all his benefits and [the solvent insurers] would have been obligated to pay the entire award. Although [the solvent insurer] would have had the right to institute supplemental proceedings against other carriers for contribution [citation], such proceedings would not lie against CIGA due to Insurance Code section 1063.1, subdivision [(c)(5)]." (*Garcia, supra,* 60 Cal.App.4th at p. 559, fn. 8; see *WCAB, supra,* 128 Cal.App.4th at pp. 319–320.) Permitting Parkwoods to recover from CIGA in the present case would, in effect, sanction an indirect recovery that could not be obtained directly. Such avoidance of the statutory limitations is not permissible. (*Collins-Pine Co. v. Tubbs Cordage Co.* (1990) 221 Cal.App.3d 882, 886–888 [271 Cal.Rptr. 20]; *E. L. White, Inc. v. City of Huntington Beach* (1982) 138 Cal.App.3d 366, 371 [187 Cal.Rptr. 879].) The fact that as part of its settlement with the developer and contractor Parkwoods chose to accept the risk of pursuing the claim against CIGA cannot increase the extent of CIGA's statutory liability.

In defending the decision below, Parkwoods puts heavy reliance on the absence from the record of numerous categories of evidence, which it asserts are necessary to establish that the excess policy of the developer and the contractor "drops down" to cover their liability over and above the exhausted coverage of their primary insurers. The record does not contain the terms of the excess insurance policy or even the name of the excess insurer, nor does it reflect the precise construction defects for which the Reliance Insureds were responsible. Nor has there been a prior adjudication, Parkwoods argues, "as to whether the Developer/General Contractor and the Reliance Insureds were jointly and severally liable with respect to anything." Even if these omissions were critical, it would not follow, as Parkwoods assumes, that the judgment below establishing CIGA's liability should stand. It would follow only that there are additional facts that need to be established before summary judgment can be granted for either party.

However, the missing facts are not essential in view of the facts to which the parties expressly stipulated. To permit the court to decide the legal issue over which they disagreed on cross-motions for summary judgment, the parties stipulated that "the Reliance Insureds and the developer and general contractor . . . were jointly and severally liable to [Parkwoods] as to those aspects of the defective construction that the Reliance Insureds were responsible for." Further, "Reliance Insureds, CIGA, and [Parkwoods] agree . . . that as a result of the settlements completed in the action, the general contractor and developer . . . exhausted all of their primary Commercial General Liability ('CGL') coverage which responded to this loss. In addition, while the general contractor and developer's excess insurance policy paid out settlement monies to resolve this loss, Reliance Insureds, CIGA, and [Parkwoods] agree that such excess insurance limits were not exhausted as a result of the settlements reached with other parties in this action. The unexhausted excess policy limits exceeded $925,000.00." Thus, it is not necessary to know the specifics of the construction defect claims because, whatever they were, the developer, contractor and Reliance Insureds were jointly and severally liable for them. It is not necessary to establish whether Parkwoods would have prevailed at trial because the parties agreed to pay the amounts in question in settlement of its claims. And it is not necessary to know the precise language of the excess policy to determine whether its coverage "dropped down" because it was stipulated that the excess insurer did in fact assume liability for the uncovered amount of the claim against the developer and the contractor, and that there was sufficient additional coverage under that policy to cover the amount for which the parties agreed the Reliance Insureds were liable. Hence, it is clear from these stipulated facts that other insurance was available to satisfy Parkwoods's claim.

■ Because other insurance was available to Parkwoods, under section 1063.1, subdivision (c)(9)(i) its claim is not a "covered claim." The fact that CIGA is not obligated to satisfy that claim is entirely consonant with the legislative determination in establishing CIGA "to provide a limited form of protection for the public, not a fund for the protection of other insurance companies from the insolvencies of fellow members." (*California Union Ins. Co. v. Central National Ins. Co.* (1981) 117 Cal.App.3d 729, 734 [173 Cal.Rptr. 35].)

### Disposition

The judgment is reversed. The matter is remanded with instructions to vacate the judgment entered in favor of Parkwoods and to enter judgment in favor of CIGA.

Parrilli, Acting P. J., and Siggins, J., concurred.

Respondent's petition for review by the Supreme Court was denied October 11, 2006, S146433.