[No. B192962. Second Dist., Div. Six. July 18, 2007.]

CALIFORNIA INSURANCE GUARANTEE ASSOCIATION, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD;
STATE COMPENSATION INSURANCE FUND et al., Respondents.

COUNSEL

Guilford Steiner Sarvas & Carbonara and Richard E. Guilford for Petitioner.

Robert W. Daneri, Suzanne Ah-Tye and Don E. Clark for Respondent State Compensation Insurance Fund.

Law Offices of Saul Allweiss and Michael A. Marks for California Workers' Compensation Institute as Amicus Curiae on behalf of Respondent State Compensation Insurance Fund.

No appearance for Respondent Workers' Compensation Appeals Board.

OPINION

PERREN, J.—In *California Ins. Guarantee Assn. v. Workers' Comp. Appeals Bd. (Weitzman)*,[1] and *California Ins. Guarantee Assn. v. Workers' Comp. Appeals Bd. (Hooten)*,[2] this court held that California Insurance Guarantee Association (CIGA) is not an insurer, and that contribution cannot be sought from CIGA by an "other insurer." Here, CIGA paid an injured worker

---

[1] *California Ins. Guarantee Assn. v. Workers' Comp. Appeals Bd. (Weitzman)* (2005) 128 Cal.App.4th 307 [26 Cal.Rptr.3d 845] (*Weitzman*).

[2] *California Ins. Guarantee Assn. v. Workers' Comp. Appeals Bd. (Hooten)* (2005) 128 Cal.App.4th 569 [27 Cal.Rptr.3d 205] (*Hooten*).

temporary workers' compensation benefits under similar circumstances. We conclude that, under the workers' compensation law of California, an other insurer is jointly and severally liable to pay these benefits. (Lab. Code, § 3200 et seq.) It follows that CIGA is entitled to full reimbursement from that other insurer, State Compensation Insurance Fund (SCIF). This is so because SCIF is jointly and severally liable to pay such benefits.

In this case, a worker suffered a specific injury to his left knee. He subsequently sustained continuous trauma (CT) to the same knee. The workers' compensation carrier insuring the first injury became insolvent while both claims were pending, and it was succeeded by CIGA. SCIF is admittedly responsible to insure the CT. Nonetheless, CIGA paid for all the nonpermanent disability indemnity benefits, for both injuries, in the sum of $43,505.53. CIGA seeks full reimbursement of that amount from SCIF. As we shall explain, SCIF is jointly and severally liable for all of these temporary claims,[3] and must fully reimburse CIGA $43,505.53 for all of the temporary benefit payments made to the injured worker for which an "other insurer" is jointly and severally liable. (Ins. Code, §§ 1063.1, subds. (b), (c)(1), (9)(i), 1063.2, subd. (b); Lab. Code, § 4600; *Weitzman, supra,* 128 Cal.App.4th 307.)

After Alejandro Hernandez sustained a specific industrial injury to his left knee, his employer's insurer, Superior National Insurance Company (SNIC), became insolvent and was liquidated. As required, CIGA began paying all of his nonpermanent workers' compensation benefits. Hernandez then sustained industrial CT to the same knee. SCIF was on the risk during part of the period when the CT occurred, but CIGA continued to pay all of Hernandez's temporary workers' compensation benefits. These nonpermanent disability benefits included temporary disability, medical expenses, and vocational rehabilitation maintenance allowance for both injuries.

CIGA sought reimbursement from SCIF for the entire sum of the temporary workers' compensation benefits it had paid. The arbitrator granted CIGA's petition, but the Workers' Compensation Appeals Board (Board) granted reconsideration to SCIF. Based on the medical evidence, Board determined that 75 percent of the worker's disability was due to the first, specific injury, and 25 percent of his disability was due to CT, while SCIF was on the risk. The Board determined that SCIF should be responsible for contributing $10,876.38, which is 25 percent of the amount paid by CIGA for the nonpermanent disability benefits. CIGA petitioned this court for review.

---

[3] Permanent disability is not at issue in this case.

CIGA contended that SCIF, a solvent insurer, should reimburse it for the entire $43,505.53 paid by CIGA because SCIF bears joint and several liability for all of the temporary workers' compensation expenses CIGA incurred. SCIF contended it should only reimburse CIGA $10,876.38 because this amount represents its percentage share of the temporary disability caused by the CT while it was on the risk.

After we denied the petition, CIGA sought review from our Supreme Court. The Supreme Court granted the petition and transferred the matter back to this court with directions to vacate our summary denial and grant review. We have done so. As we shall explain, we annul Board's decision with directions to enter a new and different decision requiring SCIF to reimburse CIGA $43,505.53—the entire sum of the nonpermanent disability benefits paid by CIGA.

## FACTS AND PROCEDURAL HISTORY

On August 30, 1999, Hernandez slipped, fell and twisted his left knee while on a tractor at work for Scarborough Farms, Inc. SNIC was on the risk for this specific industrial injury. On September 26, 2000, SNIC went into liquidation, and CIGA took responsibility for SNIC's liability on that claim.

Between August 31, 1999, and November 19, 2001, Hernandez sustained further injury to his left knee while working for Scarborough Farms. Hernandez filed a separate claim for this CT. Since November 19, 2000, SCIF was the sole insurer for the CT claim.

Nonetheless, CIGA provided temporary workers' compensation benefits to Hernandez, in the sum of $43,505.53, for all of his medical expenses, temporary disability (TD) and vocational rehabilitation maintenance allowance (VRMA) which resulted from both the specific injury and CT claims. Hernandez became permanent and stationary on October 27, 2003.

The agreed medical examiner (AME), Dr. Richard Scheinberg, opined that 75 percent of Hernandez's disability was caused by the earlier, specific injury, and 25 percent of it resulted from CT. On July 20, 2004, Dr. Scheinberg stated that "[p]atient sustained a specific and a cumulative injury as a result of his industrial exposure. . . . [I]t appears as though in regard to causation, it is a specific injury which bears the majority of the burden . . . and a small

contribution for subsequent cumulative trauma." In his supplemental report of September 22, 2004, Dr. Scheinberg refined the previous statement, saying that "75% of this patient's level of disability should be attributable to the specific injury of 8/30/99 with 25% apportionable to the subsequent cumulative trauma." Based on Dr. Scheinberg's opinion, the parties entered into a compromise and release (C&R) to settle Hernandez's claims. In the C&R, CIGA reserved the right to seek contribution from SCIF for $43,505.53, the sum it had paid for medical expenses, TD, and VRMA.

After the C&R was approved by Board, CIGA petitioned to obtain contribution from SCIF for the sum of $43,505.53 in nonpermanent disability benefits it had paid. Pursuant to Labor Code section 5275, subdivision (a)(2), the matter was referred to arbitration. In arbitration, CIGA asserted it is entitled to reimbursement from SCIF for the sum of $43,505.53, which it had paid for the nonpermanent disability benefits. (See Lab. Code, § 5500.5 [concerning apportionment]; Ins. Code, § 1063.1, subd. (c)(5), (9) [defining "covered claims"].) SCIF contended it is liable for no more than 25 percent of that sum because it was only on the risk when Hernandez sustained his CT, and the CT caused only 25 percent of his disability. SCIF argued that CIGA was responsible for the remaining 75 percent of the nonpermanent disability benefits because CIGA was responsible for the benefits attributable to the specific injury he sustained while SNIC, now insolvent, was on the risk.

In his findings, order and opinion (F&O), the arbitrator pointed out that under Insurance Code section 1063.1, subdivision (c)(5), (9)(ii), solvent insurers are barred from obtaining contribution *from* CIGA—that CIGA would not have been responsible for reimbursing SCIF for benefits it had paid if they were related to a specific injury, even if those injuries were sustained when an insolvent insurer was on the risk. (Citing *Weitzman, supra,* 128 Cal.App.4th at p. 313; *California Ins. Guarantee Assn. v. Argonaut Ins. Co.* (1991) 227 Cal.App.3d 624, 636 [278 Cal.Rptr. 23]; *Hooten, supra,* 128 Cal.App.4th 569.) The arbitrator pointed out the general rule that CIGA is not liable for any covered claims if there is any solvent insurer on the risk; that under such circumstances, there is "other insurance" within the meaning of the Insurance Code statutes cited.

The arbitrator concluded that CIGA was entitled to full reimbursement of the $43,505.53 from SCIF because SCIF was a solvent "other insurer" that was jointly and severally liable for the full amount at issue for both claims. (Lab. Code, § 4600.)

SCIF petitioned for reconsideration arguing it should be responsible only for reimbursing CIGA for the 25 percent of the nonpermanent disability benefits CIGA had paid (i.e., $10,376.38) because that is the amount which represents the sum of such benefits attributable to the CT. It argued that it is not jointly and severally liable with CIGA for the costs and expenses associated with the earlier specific injury that occurred while SNIC was insolvent; CIGA is responsible for those costs.

After granting reconsideration, Board agreed with SCIF. Board amended the arbitrator's F&O to state that SCIF is responsible only for the benefits at issue that CIGA had paid on the CT claim. Board explained that CIGA is not an ordinary insurer, but an entity created by statute for the sole purpose of providing a fund from which limited benefits would be provided employees in the event their employer's insurers became insolvent. CIGA's statutory responsibilities are limited to paying the amount of "covered claims" that are not paid because an insolvent insurer was on the risk. (Citing Ins. Code, § 1063.1, subd. (c)(9)(i) [" 'Covered claims' does not include (i) any claim to the extent it is covered by any other insurance"].) Board asserted that SCIF was not on the risk when the specific injury occurred, so it bears no responsibility for compensation benefits incurred at that time.

This petition for review ensued.

## DISCUSSION

### Standard of Review

Where, as here, the facts are undisputed, we independently review the matter according to the usual rules of statutory interpretation. (*Barnes v. Workers' Comp. Appeals Bd.* (2000) 23 Cal.4th 679, 685 [97 Cal.Rptr.2d 638, 2 P.3d 1180].) It is well established, however, that contemporaneous construction of applicable statutes by Board, which is charged with their enforcement and interpretation, while not controlling, is given great weight, and courts will not depart from that construction unless it is clearly erroneous or unauthorized. (*Honeywell v. Workers' Comp. Appeals Bd.* (2005) 35 Cal.4th 24, 34 [24 Cal.Rptr.3d 179, 105 P.3d 544]; *Weitzman, supra*, 128 Cal.App.4th at p. 318.)

The fundamental rule of statutory construction is to ascertain the intent of the Legislature in order to effectuate the purpose of the law. We look

first at the words of the statutes, giving effect to their usual, plain, and ordinary import. (*Weitzman, supra,* 128 Cal.App.4th at p. 312; *California Ins. Guarantee Assn. v. Workers' Comp. Appeals Bd.* (2004) 117 Cal.App.4th 350, 355 [12 Cal.Rptr.3d 12].) We construe the words of statutes in context, and may not render any of them to be surplusage. (*California Ins. Guarantee Assn., supra,* 117 Cal.App.4th at p. 355.) We endeavor to give statutes a reasonable, practical and commonsense interpretation that is consistent with the purpose and intent of the Legislature and which, when applied, will result in wise policy rather than mischief or absurdity. (*Id.,* at pp. 355, 362.)

### CIGA's Responsibilities Are Defined by Statute

■ "CIGA was created by the Legislature to establish a fund from which insureds could obtain financial and legal assistance if their insurers became insolvent" and did not discharge their obligations under their insurance policies. (*Weitzman, supra,* 128 Cal.App.4th at p. 312, citing *Isaacson v. California Ins. Guarantee Assn.* (1988) 44 Cal.3d 775, 784 [244 Cal.Rptr. 655, 750 P.2d 297]; see Ins. Code, §§ 119.5, 1063.) It does so " '. . . by spreading throughout the [insurance] industry a loss suffered by an insured as the result of the insolvency of an insurer. [Citations.]' " (*Berger v. California Ins. Guarantee Assn.* (2005) 128 Cal.App.4th 989, 999 [27 Cal.Rptr.3d 583].)

CIGA issues no policies, collects no premiums, makes no profits, and assumes no contractual obligations. Thus, CIGA is not an ordinary insurance company and does not act as one. Its powers, duties and responsibilities are strictly defined and circumscribed by statute; they are not coextensive with the duties owed by the insolvent insurer. (*Berger v. California Ins. Guarantee Assn., supra,* 128 Cal.App.4th at p. 999; *Denny's Inc. v. Workers' Comp. Appeals. Bd.* (2003) 104 Cal.App.4th 1433, 1438 [129 Cal.Rptr.2d 53].) These statutes " '. . . provide a limited form of protection for insureds and the public, . . . not . . . a fund to protect insurance carriers. . . .' " (*Weitzman, supra,* 128 Cal.App.4th at pp. 312–313.)

CIGA's role is limited to paying only the amount of "covered claims" of an insolvent insurer. (*Isaacson v. California Ins. Guarantee Assn., supra,* 44 Cal.3d at p. 786; *California Insurance Guarantee Assn. v. Workers' Comp. Appeals Bd.* (2003) 112 Cal.App.4th 358, 363–364 [5 Cal.Rptr.3d 127]; Ins. Code, § 1063.2, subd. (a).) As is relevant here, a "covered claim" means "(1) . . . the obligations of an insolvent insurer, including the obligation . . . (i) imposed by law and within the coverage of an insurance policy of the

insolvent insurer; (ii) which were unpaid by the insolvent insurer; . . . (iv) which were incurred prior to the date coverage under the policy terminated . . . (vi) in the case of a policy of workers' compensation insurance, to provide workers' compensation benefits under the workers' compensation law of this state . . . ." (Ins. Code, § 1063.1, subd. (c)(1).)

CIGA may sue to obtain reimbursement for amounts it has paid for noncovered claims. (Ins. Code, § 1063.2, subd. (b); *Berger v. California Ins. Guarantee Assn., supra*, 128 Cal.App.4th at pp. 999–1000.) "Any amount paid a claimant in excess of the amount authorized by this section may be recovered by action brought by the association." (Ins. Code, § 1063.2, subd. (c)(1); see *Berger, supra*, at p. 999; *Majestic Ins. Co. v. Workers' Comp. Appeals Bd. (Marin)* (2005) 70 Cal.Comp.Cases 1519, 1523 [writ denied].)

*Insurance Code Section 1063.1, Subdivision (c)(5), (9)*

Insurance Code section 1063.1, subdivision (c)(5) provides: " 'Covered claims' does not include any obligations to insurers, . . . nor their claims for contribution, indemnity, or subrogation, equitable or otherwise, except as otherwise provided in this chapter."

Insurance Code section 1063.1, subdivision (c)(9) provides: " 'Covered claims' *does not include (i) any claim to the extent it is covered by any other insurance* . . . nor (ii) any claim by any person other than the original claimant under the insurance policy in his or her own name . . . and does not include any claim asserted by an assignee or one claiming by right of subrogation, except as otherwise provided in this chapter." (Italics added.)

Insurance Code section 1063.2, subdivision (b) provides: "The association shall be a party in interest in all proceedings involving a covered claim, and shall have the same rights as the insolvent insurer would have had if not in liquidation, including, but not limited to, the right to: (1) appear, defend, and appeal a claim in a court . . . (2) . . . adjust, compromise, settle, and pay a covered claim; and (3) . . . deny a noncovered claim. . . ."

Labor Code section 3208.2 provides: "When disability, need for medical treatment, . . . results from the combined effects of two or more injuries, either specific, cumulative, or both, all questions of fact and law shall be separately determined with respect to each such injury, including, but not limited to, the apportionment between such injuries of liability for disability benefits, the cost of medical treatment . . . ."

Labor Code section 5303 provides, in relevant part: "There is but one cause of action for each injury coming within the provisions of this division. . . . [N]o injury, whether specific or cumulative, shall, for any purpose whatsoever, merge into or form a part of another injury; nor shall any award based on a cumulative injury include disability caused by any specific injury or by any other cumulative injury causing or contributing to the existing disability, need for medical treatment . . . ."

■ SCIF asserts that Labor Code sections 3208.2 and 5303 preclude joint and several liability here for the entire cost of the nonpermanent disability benefits paid by CIGA. The purpose and function of these two sections, however, is only to preclude an employee from escaping the statute of limitations by attempting to merge a purported prior injury for which no timely application was made with a timely, current claim. (See generally *Buhlert Trucking v. Workers' Comp. Appeals Bd.* (1988) 199 Cal.App.3d 1530, 1537–1540 [247 Cal.Rptr. 190] [Lab. Code, § 4600, discussed *post*, does not limit joint and several liability for full award of present and future medical treatment].)[4]

In *Buhlert Trucking v. Workers' Comp. Appeals Bd., supra*, 199 Cal.App.3d 1530, the court held that Labor Code section 4600 imposed joint and several liability on an employer for the full award of costs of future medical treatment to an employee injured in the course of his employment where the need for such treatment was partially attributable to a previous industrial injury. "The duty imposed by section 4600 upon an employer is joint and several, subject only to the right of contribution as between employers. [Citations.] [¶] . . . [T]here is nothing in section 4600 or . . . elsewhere in the 'complete' workers' compensation statutory system, to preclude its application to medical treatment, whether present or future, arising from the combined effects of present and preexisting industrial injuries." (*Buhlert, supra*, at pp. 1534–1535.) If an industrial injury contributes to an employee's need for medical treatment, employer-provided medical treatment is mandated by Labor Code section 4600. (*Buhlert, supra*, at pp. 1534–1535.)

In *Industrial Indemnity Co. v. Workers' Comp. Appeals Bd.* (*Garcia*) (1997) 60 Cal.App.4th 548, 556, 558–559 [70 Cal.Rptr.2d 295] (*Garcia*), a workers' compensation referee assessed an award against two insurers, Industrial Indemnity Company (Industrial) and SCIF, as well as CIGA, in proportion to periods of coverage by Industrial, SCIF, and an insolvent insurer, Pacific

---

[4] *Hooten, supra*, 128 Cal.App.4th 569.

States Casualty Company, for the employee's CT. Board rescinded the award against CIGA, and substituted a joint and several award against Industrial and SCIF. Concluding that Board correctly decided the matter, the Court of Appeal affirmed its award. (*Id.,* at pp. 551–552.)

■ *Garcia* explained that CIGA's duties are not coextensive with those owed by an insolvent insurer under its policy, but are limited to paying the amount of "covered claims" authorized by statute. (*Garcia, supra,* 60 Cal.App.4th at pp. 556–557.) " 'Cases interpreting [Insurance Code section 1063.1, subdivision (c)(9)(i)] have established that where an insured has overlapping insurance policies and one insurer becomes insolvent, the other insurer, even if only a secondary or excess insurer, is responsible for paying the claim. In other words, *CIGA is an insurer of last resort and does not assume responsibility for claims where there is any other insurance available.*' " (*Garcia, supra,* at p. 557, quoting *R. J. Reynolds Co. v. California Ins. Guarantee Assn.* (1991) 235 Cal.App.3d 595, 600 [1 Cal.Rptr.2d 405].) This is also true where the solvent carriers provide the coverage during different time periods. (*Garcia, supra,* at pp. 557–558.) CIGA may not use its funds to pay the insolvent insurer's obligation to other insurers. (*Id.,* at p. 558.)

Even though Garcia's employer's three workers' compensation policies did not overlap chronologically, Industrial and SCIF were jointly and severally liable for all the expenses of the entire disability. Since "other insurance," provided by Industrial and SCIF, was available, CIGA was statutorily prohibited from making any payment towards the award. The Legislature did not intend CIGA to defray or diminish the responsibility of other carriers. Because other insurance was available, and the insurers were jointly and severally liable to satisfy the employer's responsibility to the worker, CIGA had no liability for any portion of the award. (*Garcia, supra,* 60 Cal.App.4th at p. 559.) Even if Garcia had elected to proceed against only one of the solvent insurers for all his benefits, that insurer would have been obligated to pay the entire award and could not institute proceedings against CIGA for contribution. (*Id.,* at p. 559, fn. 8.)

In *Denny's Inc. v. Workers' Comp. Appeals Bd., supra,* 104 Cal.App.4th 1433, an employee sustained CT while Denny's was permissibly self-insured and a successive insurer became insolvent. CIGA took over paying benefits for the insolvent carrier. The Court of Appeal held that the employee may claim workers' compensation benefits against the self-insured employer, which would be held jointly and severally liable for the entire award. (*Id.,* at pp. 1440–1441.) The court explained that CIGA was created only to protect

the insured public, not self-insurers or other insurance. (*Id.,* at pp. 1441–1442.) CIGA could not be responsible for the expenses it incurred because there was "other insurance" available. (*Ibid.*)

Insurers may not obtain contribution or reimbursement from CIGA even if the injuries for which compensation benefits were paid are not joint and several, but separate and distinct. (*Hooten, supra,* 128 Cal.App.4th at p. 571.) Such claims are also barred by Insurance Code section 1063.1, subdivision (c)(5), (9). (*Hooten, supra,* at p. 571.)

In *Hooten,* the industrially injured worker filed four claims for workers' compensation. The first claim was for a specific injury to a shoulder. At the time, the employer was insured by Superior Pacific Casualty Company. The second claim alleged another specific injury to his shoulders and neck. At that time, the employer was insured by Argonaut. The third claim was for CT to his neck, shoulders and other body parts during a period which overlapped the second claim. Argonaut was the carrier during this CT period. The fourth claim alleged CT similar to the third claim but for a later period. At the time of the fourth claim, Wausau Insurance Company was on the risk.

Hooten entered into a C&R settling all claims with all of the insurers. The C&R stated that Argonaut reserved the right to seek contribution and/or reimbursement against Superior Pacific. Superior Pacific was liquidated and CIGA assumed liability for its covered claims. Argonaut sought reimbursement from Superior Pacific/CIGA for indemnity and medical benefits it paid Hooten. Argonaut relied on a medical report which apportioned 90 percent of Hooten's disability to the first specific injury and 10 percent to the second specific injury.

The workers' compensation judge (WCJ) granted Argonaut's petition for reimbursement from CIGA and CIGA sought reconsideration. The WCJ recommended against reconsideration, reasoning that because the liability of Argonaut and CIGA is not joint and several, the reimbursement claim is a covered claim for which there was no "other insurance" available for the portion of the liability which may be attributable to Superior/CIGA. (*Hooten, supra,* 128 Cal.App.4th at p. 572.) The WCJ stated that Insurance Code section 1063.1, subdivision (c)(5) concerned contribution by a solvent insurance carrier in a single case arising out of a single incident, and section 1063.1, subdivision (c)(9) only concerns a person, not some other entity. The WCJ concluded that *Hooten* involved separate injuries, with separate insurance carriers on the risk for each of those injuries, and thus Insurance Code section 1063.1, subdivision (c)(5), (9) does not support CIGA's position. (*Hooten, supra,* at p. 572.) Board denied reconsideration and CIGA petitioned this court.

In *Hooten,* we followed *Weitzman* and concluded that CIGA is not responsible to Argonaut for reimbursement; that the claim is excluded under Insurance Code section 1063.1, subdivision (c)(5), (9)(ii). (See *Weitzman, supra,* 128 Cal.App.4th 307.) We explained there is no statutory provision under which joint and several claims by insurers should be treated any differently as to CIGA than other claims. Insurance Code section 1063.1, subdivision (c)(5) excludes not only claims by insurers for contribution, indemnity or subrogation, but also " '*any* obligations to insurers.' " (*Hooten, supra,* 128 Cal.App.4th at p. 573, italics added.) Accordingly, we annulled Board's order and remanded with instructions to deny Argonaut's reimbursement claim.

    ■   *Weitzman* and *Hooten* compel the conclusion that SCIF, as solvent "other insurance," must reimburse CIGA in full for all the temporary workers' compensation benefits it paid regarding these injuries, which is the sum of $43,505.53. SCIF is jointly and severally liable for all of these nonpermanent disability benefits CIGA paid regarding the injuries, which acted in concert to cause the disability that was sustained by Hernandez. (See *Buhlert Trucking v. Workers' Comp. Appeals Bd., supra,* 199 Cal.App.3d at pp. 1536–1537; accord, *Weitzman, supra,* 128 Cal.App.4th at p. 318; Lab. Code, § 4600; cf. *Gomez v. Casa Sandoval* (2003) 68 Cal.Comp.Cases 753, 760.) Between workers' compensation insurers who are jointly and severally liable for various nonpermanent disability benefits, there is generally pro rata apportionment for the shared liability. (See generally Lab. Code, §§ 3208.2, 5303, 5500.5.) But, CIGA is not another workers' compensation insurer; it is a fund with responsibilities that are limited by statute in order to insure that the worker is protected. CIGA does not protect insurers.

Under the specific provisions of Insurance Code section 1063.1, subdivision (c)(9)(i), SCIF constitutes solvent "other insurance" that must reimburse the CIGA fund for the temporary workers' compensation benefits it paid in this matter. Under Insurance Code sections 1063, subdivision (a), and 1063.1, subdivision (c)(5), these benefits are not "covered claims." (See *Garcia, supra,* 60 Cal.App.4th at p. 559; *Buhlert Trucking v. Workers' Comp. Appeals Bd., supra,* 199 Cal.App.3d at pp. 1536–1538; *Weitzman, supra,* 128 Cal.App.4th at pp. 317–320 [in which we disagree with *Gomez v. Casa Sandoval,* a matter which was consolidated with *Nokes v. Placer Savings Bank* (2003) 68 Cal.Comp.Cases 753].)[5]

---

[5] (See also *State Comp. Ins. Fund v. Workers' Comp. Appeals Bd.* (*Martinez*) (2006) 71 Cal.Comp.Cases 973, 974 [writ denied] and *Security Ins. Co. of Hartford v. Workers' Comp. Appeals Bd.* (*Murillo*) (2006) 72 Cal.Comp.Cases 159 [writ denied], panel decisions which are in accord.)

Accordingly, we annul Board's decision and remand this matter with directions for Board to enter a new and different decision, consistent with this opinion, requiring SCIF to reimburse CIGA for 100 percent of its outlay for the nonpermanent disability benefits at issue here, which is the sum of $43,505.53.

Gilbert, P. J., and Coffee, J., concurred.

On August 8, 2007, the opinion was modified to read as printed above.