Filed 3/22/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| CALIFORNIA INSURANCE GUARANTEE ASSOCIATION, <br><br> Petitioner, <br><br> v. <br><br> WORKERS' COMPENSATION APPEALS BOARD et al., <br><br> Respondents. | B263869 <br><br> (W.C.A.B. Nos. ADJ7167413, ADJ7167333) |

PROCEEDINGS to review a decision of the Workers' Compensation Appeals Board. Order annulled.

Guilford Sarvas & Carbonara, Frank E. Carbonara, Richard E. Guilford; Benthale, McKibbin & McKnight, Robert A. Mata for Petitioner.

Anne Schmitz, James T. Losee, Margaret W. Hosel for Respondent Workers' Compensation Appeals Board.

_____

Two insurers, Care West Pegasus Modesto (Care West) and Ullico Casualty Company (Ullico), were jointly and severally liable for claims arising from an employee's workplace injury.  In a compromise and release agreement, they settled the employee's claims and apportioned between themselves roughly 50/50 liability for any remaining third party charges.[1]  When Ullico became insolvent and was liquidated, responsibility for third party claims against it was assumed by the California Insurance Guarantee Association (CIGA), which the Legislature established in 1969 to protect against loss to insureds "arising from the failure of an insolvent insurer to discharge its obligations under its insurance policies."  (Ins. Code, §§ 119.5, 1063, et seq.; *Isaacson v. California Ins. Guarantee Assn.* (1988) 44 Cal.3d 775, 784.)

CIGA moved to be dismissed from the instant workers' compensation cases on the ground that it was authorized to pay only "covered claims," from which the Legislature expressly excluded any "claim to the extent it is covered by any other insurance."  (Ins. Code, §§ 1063.1, subd. (c)(9), 1063.2, subd. (a).)  CIGA argued Care West's policy constituted "other insurance" that covered third party claims.  The Workers' Compensation Appeals Board (the Appeals Board) denied CIGA's motion on the ground that the Care West/Ullico agreement limited Care West's liability to roughly half of any third party claims, thereby rendering Care West's insurance unavailable as to the remaining half.

CIGA petitioned for a writ of review, contending the CareWest/Ullico agreement did nothing to change the "several" nature of Care West's obligation, under which Care West was liable for 100 percent of the lien claims, with contribution rights against Ullico's estate, not CIGA.  We summarily denied the petition, but the Supreme Court granted review and remanded the case to us with directions to hear the matter on the

---

[1] In workers' compensation cases, insurers may settle an employee's personal claims before adjusting lienholder claims.  (See Cal. Const., art. XIV, § 4 [injured employee entitled to resolution of compensation claims "expeditiously, inexpensively, and without incumbrance"].)

2

merits.  We thereafter invited the Appeals Board to respond to CIGA's petition, which it has done.

We now conclude the Care West/Ullico compromise and release agreement did not relieve Care West of its several liability for third party claims.  We therefore annul the Appeals Board's decision.

## BACKGROUND

Rosa Lopez filed an application for workers' compensation benefits for a cumulative injury sustained while she was employed as a grocery clerk by Superior Center Concepts, which was insured during the period of injury under successive policies issued by Care West and Ullico.[2]  Various medical providers filed lien claims in the action.  On March 9, 2012, Lopez resolved her workers' compensation claim by entering into a compromise and release agreement with Care West and Ullico for $15,000.  No lien claimant participated in the settlement.

In the compromise and release agreement the insurers stipulated they would "pay, adjust, or litigate all liens of record," would "share equally for liability for med-legal charges," and would allocate 52 percent of liability for the treatment charges to Care West and 48 percent to Ullico, "according to proof and with rights to contribution and reimbursement between the two being reserved."  The settlement has been fully executed except as to third party lien claims.

On March 14, 2012, the workers' compensation administrative law judge (WCJ) approved the compromise and release, including the insurers' stipulation apportioning liability, and issued an award in Lopez's favor for $15,000.

Ullico became insolvent and was liquidated on May 30, 2013, after which CIGA assumed liability for its "covered claims" pursuant to Insurance Code section 1063.1.

On June 10, 2014, CIGA filed a petition for dismissal from the workers' compensation cases, arguing all lien claims were excluded from CIGA's mandate by

---

[2] Lopez filed a second application for benefits for a different cumulative injury sustained when her employer was insured by Zurich Insurance.  Zurich Insurance settled all claims relating to that injury and is not part of this appeal.

Insurance Code section 1063.1, subdivision (c)(9), which prohibits CIGA from paying any "claim to the extent it is covered by any other insurance." CIGA argued that because Care West was jointly and severally liable for claims arising from Lopez's injury, its policy constituted "other insurance" that covered 100 percent of any outstanding claims notwithstanding the insurers' compromise and release agreement apportioning liability.

Care West objected to CIGA's petition, arguing the insurers' apportionment of liability limited Care West's liability to 50 percent of any remaining legal-medical charges and 52 percent of any remaining medical charges. Therefore, Care West argued, CIGA was liable for 50 percent of any outstanding legal-medical charges and 48 percent of any outstanding medical lien claims.

The WCJ denied CIGA's petition, finding that its 2012 approval of the compromise and release agreement operated as a final judgment apportioning liability between the insurers and was now binding on CIGA as Ullico's successor.

CIGA petitioned for reconsideration from the Appeals Board, contending even a final judgment against an insolvent insurer is subject to the Insurance Code's exclusions from CIGA's "covered claims." The WCJ recommended denial of the petition.

The Appeals Board denied reconsideration, holding "insurers are not jointly and severally liable where they have entered into a stipulation as to apportionment of liability between them." "In essence," the Appeals Board held, "after the stipulation, liability [was] no longer joint and several, but [was] rather divided between the insurers in accordance with the stipulation," and "where the [Appeals Board] has issued a final decision determining apportionment of liability between insurers, the decision is *res judicata* and may not be re-litigated."

As noted, we summarily denied CIGA's subsequent writ petition, but the Supreme Court granted review and remanded the case to us with directions to grant the petition. We did so, and directed the Appeals Board to answer the petition. In its answer, the Appeals Board contends the approved compromise and release was a final judgment that may not be relitigated, and after entry of that judgment Care West's and Ullico's liability was no longer joint and several.

## DISCUSSION

The facts are undisputed, as is most of the law. The issue is whether the insurers' agreement apportioning liability, and the WCJ's approval of that agreement, rendered the insurers' liability no longer joint and several. We conclude it did not.

Section 4 of article XIV of the California Constitution empowers the Legislature to "create[] and enforce a complete system of workers' compensation" by placing a liability on employers "to compensate . . . their workers for injury or disability . . . incurred or sustained . . . in the course of their employment, irrespective of the fault of any party." "A complete system of workers' compensation includes . . . full provision for such medical, surgical, hospital and other remedial treatment as is requisite to cure and relieve from the effects of such injury." (Cal. Const., art. XIV, § 4.) Labor Code section 4600 implements this direction by providing that an employer is liable for medical expenses that are "reasonably required to cure or relieve the injured worker from the effects of his or her injury." (Lab. Code, § 4600, subd. (a).)

The obligation imposed upon an employer by Labor Code section 4600 is joint and several. (*Buhlert Trucking v. Workers' Comp. Appeals Bd.* (1988) 199 Cal.App.3d 1530, 1534.) If two or more insurers provide workers' compensation coverage during the statutory period of liability for a cumulative injury, they are jointly and severally liable for claims arising from that injury. (Lab Code, § 5500.5, subd. (c); *Royal Globe Ins. Co. v. Industrial Accident Com.* (1965) 63 Cal.2d 60, 62, fn. 1; *Colonial Ins. Co. v. Industrial Accident Com.* (1946) 29 Cal.2d 79, 82; see *General Accident Ins. Co. v. Workers' Comp. Appeals Bd.* (*Loterstein*) (1996) 47 Cal.App.4th 1141, 1148.)

When two or more insurers are jointly and severally liable for workers' compensation benefits and one of them becomes insolvent, the policy issued by the solvent insurer constitutes "other insurance" for purposes of Insurance Code section 1063.1, subdivision (c)(9), which excludes the benefits from coverage by CIGA. (*California Ins. Guarantee Assn. v. Workers' Comp. Appeals Bd.* (*Hernandez*) (2007) 153 Cal.App.4th 524, 537; *California Ins. Guarantee Assn. v. Workers' Comp. Appeals Bd.* (*Weitzman*) (2005) 128 Cal.App.4th 307, 317-318.)

5

Here, it is undisputed Care West and Ullico were jointly and severally liable for lien claims relating to Lopez's injury. Therefore, Care West's insurance constitutes "other insurance" for purposes of CIGA's mandated statutes, and lien claims relating to Lopez's injury cannot be covered claims.

The Appeals Board argues the insurers' apportionment of liability between themselves effectively terminated joint and several liability and converted each insurer's obligation to an individual one. The argument reflects a basic misunderstanding of the nature of "several" liability, which is not, strictly speaking, a rule of liability at all—it is a rule of joinder. As we will explain, several liability has nothing to do with, and cannot be changed by, apportionment of an obligation between promisors.

"At common law, when multiple parties promised the same performance, they were presumed to be jointly obligated absent a clear indication otherwise. [Citation.] Parties who are jointly liable are each responsible for their share of a total obligation. When enforcement was sought, the common law rule required that *all* jointly liable parties be joined in a single suit that would determine the total amount of their shared liability. [Citations.] This joinder requirement sometimes made enforcement difficult, if not impossible. [Citation.] [¶] California and nearly all other states have passed statutes to ameliorate the harshness of the common law's compulsory joinder rule. [Citation.] The typical solution was to convert 'joint' obligations into '"joint and several"' obligations. [Citation.] A joint and several contract is considered to be a contract that is made both separately with each promisor and jointly with all the promisors. [Citation.] Parties to a joint and several contract are thus bound jointly, so that they are liable for the entire obligation, and severally, so that each may be sued separately for the entire loss. [Citation.] The change to joint and several liability allowed individual promisors to be sued for enforcement of a contract without joining all copromisors." (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 820.)

The several nature of an obligation is thus a policy-driven procedural rule intended to facilitate a claimant's recovery from multiple obligors. The rule contemplates that a promisee should not bear the burden of apportioning liability among promisors and

6

should recover on an obligation without undue hindrance. A copromisor who is jointly and severally liable with another but has been made to pay 100 percent of an obligation may seek contribution from the other promisor.

As discussed above, the rule of joint and several liability applies in the workers' compensation context, and serves the goal of resolving injured employees' claims "expeditiously, inexpensively, and without incumbrance." (Cal. Const., art. XIV, § 4.) "In any case involving a claim of . . . cumulative injury occurring as a result of more than one employment . . . , the employee making the claim . . . may elect to proceed against any one or more of the employers. Where such an election is made, the employee must successfully prove his or her claim against any one of the employers named, and any award which the appeals board shall issue awarding compensation benefits shall be a joint and several award as against any two or more employers who may be held liable for compensation benefits." (Lab. Code, § 5500.5, subd. (c).) This rule applies to workers' compensation insurers as well as employers. (*Loterstein*, *supra*, 47 Cal.App.4th at p. 1148.) An insurer that has been held liable for a workers' compensation award may then institute proceedings "for the purpose of determining an apportionment of liability or right of contribution." (Lab. Code, § 5500.5, subd. (e).) Copromisors may also, as was done here, apportion liability while settling the employee's claim but before paying third party claims. But determination of a promisor's share of a liability does nothing to change the several nature of it.

In sum, several liability in the workers' compensation context is a procedural right that promotes the public policy favoring expeditious and inexpensive resolution of workers' compensation claims by enabling a claimant to obtain compensation without having to join multiple co-obligors. The several liability scheme contemplates that co-obligors will apportion liability between themselves, a matter in which the worker and lien claimant have no interest. Whether that apportionment happens as part of litigation or settlement, or before or after payment of a claim, is of no moment to the worker or lien claimant and can have no effect on obligations owed them.

7

Here, Care West and Ullico understood their liability remained joint and several even after settlement and apportionment, as in the compromise and release agreement they stipulated to apportion liability "52% [Care West] and 48% [Ullico] according to proof *and with rights to contribution and reimbursement between the two being reserved*." (Italics added.) The contribution and reimbursement provisions would have been meaningless in the absence of joint and several liability.

We agree with the Appeals Board that the compromise and release approved by the WCJ in 2012 was a judgment having the same force and effect as an award made after a hearing. (*Johnson v. Workers' Comp. Appeals Bd.* (1970) 2 Cal.3d 964, 973; *State Farm General Ins. Co. v. Workers' Comp. Appeals Bd*. (*Lutz*) (2013) 218 Cal.App.4th 258, 269; 2 Hanna, Cal. Law of Employee Injuries and Workers' Compensation (rev. 2d ed.) § 29.04[4], pp. 29-30.) But the judgment merely apportioned liability; it did not change the joint and several nature of the now-apportioned liability.

## DISPOSITION

The Appeals Board's order denying CIGA's petition for reconsideration is annulled and the matter is remanded to the Appeals Board with directions to enter an order dismissing CIGA from these proceedings. CIGA shall recover its costs in pursuing this petition.

TO BE PUBLISHED.

CHANEY, J.

We concur:

ROTHSCHILD, P. J.

JOHNSON, J.

8