Filed 10/30/19

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA INSURANCE GUARANTEE ASSOCIATION,<br><br>    Plaintiff, Cross-defendant and<br>    Appellant,<br><br>    v.<br><br>SAN DIEGO COUNTY SCHOOLS RISK MANAGEMENT JOINT POWERS AUTHORITY et al.,<br><br>    Defendants, Cross-complainants and<br>    Respondents. | D074360<br><br><br><br>(Super. Ct.<br>No. 37-2016-00004801-CU-IC-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Katherine A. Bacal, Judge.  Reversed.

Law Offices of Adrienne Dee Cohen, Adrienne D. Cohen and Julie R. Ursic for Plaintiff, Cross-defendant and Appellant.

TencerSherman, Sam G. Sherman and Jessica L. Mulvaney for Defendants, Cross-complainants and Respondents.

School bus driver Colleen Knowles sought workers' compensation from her employer, Mountain Empire Unified School District (the District). The District is a self-insured employer under the workers' compensation scheme, and its workers' compensation claims are administered through the San Diego County Schools Risk Management Joint Powers Authority (JPA). JPA purchased excess workers' compensation insurance to cover claims exceeding a set retention. The District is an additional insured under those policies.

When a dispute over compensation arose, Knowles and the District sought adjudication before the Workers' Compensation Appeals Board (WCAB). An administrative law judge ultimately approved their stipulation that Knowles suffered a "specific" injury on May 6, 2003. The distinction between a "cumulative" and a "specific" injury matters for determining *which* of JPA's excess insurance policies was triggered. As JPA's excess insurer during the stipulated injury date, Kemper Insurance Company (Kemper) indemnified JPA until it went insolvent. JPA then approached California Insurance Guarantee Association (CIGA), a statutorily created insolvency insurer of last resort, to make up what Kemper had failed to pay.

But CIGA is only obligated to pay "covered claims," defined to exclude claims for which other insurance is available. (Ins. Code, § 1063.1, subd. (c)(9).) On this basis CIGA denied coverage, asserting Knowles suffered a *cumulative* injury, which meant that JPA might recover from a *different* excess insurer (other than Kemper). CIGA sued JPA and the District (collectively, defendants) for declaratory relief, asserting that because Knowles suffered a cumulative injury, JPA's claim was not a "covered claim." In their

2

cross-complaint, defendants sought reimbursement from CIGA of benefit payments made to Knowles after Kemper went insolvent.

Defendants moved for summary judgment on the complaint and cross-complaint. The trial court granted both motions and entered judgment in their favor, requiring CIGA to reimburse $129,836.91 plus costs. Central to the court's ruling, and to CIGA's appeal, is a jurisdictional question: Does the superior court have jurisdiction to find that Knowles suffered a cumulative injury even if this conflicts with the stipulation before the WCAB, or is injury characterization an issue within the WCAB's exclusive jurisdiction? The court granted defendants' motions because it believed the WCAB had exclusive jurisdiction to decide the nature of Knowles's injury.

Although this issue appears to be one of first impression in California, federal courts have rejected WCAB exclusivity in similar cases involving excess workers' compensation insurance. (*San Francisco BART Dist. v. General Reinsurance Corp.* (N.D.Cal. 2015) 111 F.Supp.3d 1055, 1074 (*BART I*), affirmed (9th Cir. 2017) 726 F.App'x. 562 (*BART II*); *San Diego Cty. Schs. Risk Mgmt. Joint Powers Auth. v. Liberty Ins. Corp.*, *et al.* (2018) 339 F.Supp.3d 1019, 1030 (*Liberty*).) For reasons we explain, we agree with these authorities and conclude based on the purpose of excess insurance that the superior court has jurisdiction to characterize Knowles's injury in this action differently than was reflected in the WCAB stipulation. Accordingly, we reverse the judgment and direct the court to enter a new order denying defendants' motions for summary judgment.

3

FACTUAL AND PROCEDURAL BACKGROUND

A.      *Knowles Is Injured and Files a Workers' Compensation Action*

Knowles began working for the District as a substitute school bus driver in 1986 and became a permanent driver in 1993. She injured her elbow in 1995 and felt muscle strain after bus accidents in 1998 and 2002. Her upper body pain seemed to worsen in 2002 and early 2003.

On May 6, 2003, Knowles informed her supervisor that she was experiencing pain. The supervisor told her to fill out a claim form for workers' compensation benefits. She did so a week later, listing tendonitis in her right elbow from "repeated usage over a long period of time [from] 1995 to 2003." Her supervisor filed a contemporaneous report likewise attributing Knowles's injury to "repeated use over a long period of time." Following a medical evaluation, Knowles was placed on a modified work schedule in February 2004. She filled out an amended claim form in March listing tendonitis in her right elbow and carpal tunnel syndrome in her right wrist, again from "repeated use over a long period of time [from] 1995−2003."

Knowles worked a modified schedule from February 2004 until her last day on June 16, 2004. In September, she submitted a third claim form indicating she had suffered an injury on May 6, 2003, in her "right upper extremity−neck" from driving a bus. As Knowles would later explain, May 6 was simply the date she reported the pain to her supervisor, not the date of any specific workplace injury. Medical reports consistently stated Knowles had pain from "repetitive overuse."

4

On September 3, 2004, Knowles filed an Application for Adjudication before the WCAB.  In its July 2005 answer, the District accepted her right elbow injury but disputed injuries to her neck and upper extremities.  It also disagreed she was injured *on* May 6, 2003, stating Knowles had instead suffered "CT [cumulative trauma] ending on 05/06/03."  Dr. Gregory Mack performed an Agreed Medical Evaluation in 2006 to resolve disputed issues regarding Knowles's injuries.  Knowles continued to seek treatment over the next several years.

In July 2011, Knowles and the District signed a Stipulation and Request for Award in the WCAB action.  Notwithstanding the District's prior objection, the parties stipulated that Knowles suffered a "specific injury" on May 6, 2003, to her shoulder, wrist, upper extremities, and neck.  They further agreed on a payment schedule to cover Knowles's temporary and permanent disabilities.  A workers' compensation judge entered an Award (hereafter Award) in August 2011, indicating by checking a box that he had approved the parties' factual stipulations.

B.      *Kemper Provides Excess Coverage for JPA*

The District is a lawfully self-insured employer under the workers' compensation scheme.  (Lab. Code, § 3700.)[1]  It is a member of JPA, which administers a self-insurance program for workers' compensation claims involving its members.  JPA, in turn, opted to purchase excess workers' compensation insurance.  (§ 3702.8, subd. (c).)  The District is an additional insured on JPA's excess insurance policies.

After the WCAB Award, JPA tendered compensation to Knowles and sought reimbursement from its excess carrier, Kemper.  Kemper's policy covered JPA from July 2002 to July 2003, meaning it was in effect on the May 6, 2003 stipulated specific injury date.  (JPA previously satisfied the self-insured retention of $100,000 on the Kemper policy.)  Kemper made payments totaling $207,908 until 2013, when it became insolvent.

C.      *After Kemper's Insolvency, JPA Seeks Reimbursement from CIGA*

JPA then turned to insolvency insurer CIGA for reimbursement.  CIGA denied coverage in May 2014, explaining there was no evidence Knowles had suffered a specific injury.[2]  If her injury was found to be cumulative, CIGA believed that JPA could pursue other available insurance—namely, under the Swiss Re Group (Swiss Re) excess workers' compensation insurance policy that covered JPA from July 2003 to June 30, 2004.

---

[1]     Further statutory references are to the Labor Code unless otherwise indicated.

[2]     The record indicates that even after stipulating to a specific injury before the WCAB, JPA's claim specialist continued to describe Knowles's injury as "an accepted CT [cumulative trauma] claim" despite the WCAB Award.

6

In November 2015, defendants filed a request for "Reimbursement by CIGA" in the WCAB. The WCAB corrected the original Award in April 2016 to reflect that the District was "Self-Insured," delete the erroneously named insurance carrier, and indicate that the District would be the responsible party under the Award. The amendment did not affect the parties' stipulation that the Award was for a "specific injury" occurring on May 6, 2003. CIGA was not joined as a party to the WCAB action until May 6, 2016.

Meanwhile in February 2016, CIGA filed this action in superior court. It sought declaratory relief that JPA's reimbursement request is not a covered claim because Knowles suffered a cumulative injury for which other insurance is available. The parties agreed in October 2016 to stay WCAB proceedings pending resolution of the superior court action. Defendants answered the complaint and filed a cross-complaint for reimbursement of funds paid to Knowles after Kemper went insolvent.

D.      *The Motions for Summary Judgment*

Defendants filed motions for summary judgment on the complaint and cross-complaint. They argued the court lacked jurisdiction to determine Knowles suffered a cumulative injury, as this fact had already been settled before the WCAB. The court agreed, distinguishing *BART I*, *supra*, 111 F.Supp.3d 1055 and concluding injury characterization was within the WCAB's exclusive jurisdiction.

After defendants filed proposed judgments, CIGA promptly objected and sought reconsideration or clarification, claiming the court's jurisdictional ruling did not resolve CIGA's reimbursement obligation under the cross-complaint. Even if the WCAB had exclusive jurisdiction over injury characterization, CIGA suggested the parties could

7

litigate in that forum whether defendants' reimbursement request was a "covered claim." The court denied CIGA's motion for reconsideration as untimely, but set a hearing to determine "the form of judgment" to satisfy its request for clarification.

At that hearing CIGA argued the court had simply ruled it lacked jurisdiction to decide Knowles suffered a cumulative injury, which did not support a reimbursement award on the cross-complaint. Defendants disagreed, noting they had clearly requested summary judgment on the cross-complaint and included evidence supporting their request for reimbursement. The court took the unusual step of allowing supplemental briefing as to whether the proposed judgment awarding reimbursement reflected the court's ruling. The court ultimately entered judgment in defendants' favor on their cross-complaint, requiring CIGA to reimburse JPA $129,836.91 plus $3,335.87 in costs. It also entered judgment in defendants' favor on CIGA's complaint, requiring CIGA to pay $3,335.87 in costs.

## DISCUSSION

Central to CIGA's appeal is whether the superior court has jurisdiction to determine that Knowles suffered a *cumulative* injury after the WCAB approved a stipulation that her injury was *specific* in nature. Concluding that the court has such jurisdiction, we must reverse.

Context matters. This action addresses whether CIGA must cover a claim for an insolvent *excess* insurer. A court's resolution of a factual question underpinning *excess* coverage has no bearing on Knowles's recovery under the WCAB Award, since the District was a self-insured employer under the Workers' Compensation Act (WCA;

8

§ 3200 et seq.). Knowles is entitled to compensation pursuant to the Award. CIGA's action cannot change that; it will resolve only whether it must *indemnify* the District and JPA for their benefit payments. Although "perhaps not optimal, and a situation to be avoided if possible" (*BART I*, *supra*, 111 F.Supp.3d at p. 1065), the superior court has jurisdiction in this context to characterize Knowles's injury, even if its finding conflicts with the WCAB stipulation.

1.      *Background Concepts*

This action involves an interplay between the workers' compensation scheme, excess coverage for self-insured employers, CIGA's role as an insolvency insurer, and the distinction between a specific and a cumulative injury for purposes of CIGA's liability. We briefly discuss each concept before turning to the jurisdictional inquiry.

a.      *The Workers' Compensation Scheme and Excess Insurance*

Pursuant to its constitutional authority (Cal. Const., art. XIV, § 4), the Legislature enacted the WCA as "a comprehensive statutory scheme governing compensation given to California employees for injuries incurred in the course and scope of their employment." (*Charles J. Vacanti*, *M.D.*, *Inc. v. State Comp. Ins. Fund* (2001) 24 Cal.4th 800, 810 (*Vacanti*).) This scheme rests on a presumed "compensation bargain": an employer assumes no-fault liability for workplace injuries in exchange for limits on recoverable compensation; employees gain swift and certain payment without proof of fault but lose broader remedies in tort. (*Id.* at p. 811; see §§ 3600, subd. (a) [conditions of compensation], 3602, subd. (a) [exclusive remedy].)

9

All employers except the state must "secure the payment of compensation" by either carrying workers' compensation insurance or self-insuring. (§ 3700; *La Jolla Beach & Tennis Club*, *Inc. v. Indus. Indem. Co.* (1994) 9 Cal.4th 27, 36 (*La Jolla*).) Self-insureds must demonstrate a financial ability to administer and pay potential workers' compensation claims to their employees. (§ 3700, subd. (c).) The District is a self-insured employer. Its workers' compensation claims are managed by JPA, a joint powers authority created under Government Code section 6500 et seq. The WCA permits, but does not require, self-insured employers to purchase excess workers' compensation insurance to discharge their compensation obligation. (§ 3702.8, subd. (c).) In this case JPA purchased an excess policy covering the July 2002 to July 2003 period from Kemper; a subsequent excess policy covering the July 2003 to June 30, 2004 period was obtained from Swiss Re.

Workers' compensation benefits are automatically paid to an injured worker by a workers' compensation insurer or self-insured employer. If a dispute arises, the parties may litigate it before the WCAB. (*Vacanti*, *supra*, 24 Cal.4th at p. 811; see §§ 5501, 5501.5.) Applications for adjudication in the WCAB are decided by a workers' compensation administrative law judge. Those decisions are subject to administrative review before a three-member panel of the seven-member WCAB. (1 Cal. Workers' Compensation Practice (Cont.Ed.Bar 4th ed. 2019) § 1.16, p. 1-10; see Lab. Code, §§ 111, 112.) The WCA provides only narrow grounds for judicial review of WCAB decisions. (§ 5952.)

b.      *California Insurance Guarantee Association*

CIGA is a compulsory association of state-regulated insurance companies created by statute.  (Ins. Code, § 1063 et seq.)  To insure against loss arising from an insolvent insurer's failure to discharge its policy obligations, CIGA "collects premiums from its member insurers to the extent necessary to pay statutorily defined 'covered claims' on behalf of insolvent insurers.  (Ins. Code, §§ 1063.1, 1063.2, 1063.5; [citations].)  CIGA is not an insurer which issues policies and assumes contractual obligations or collects premiums and makes profits, and does not stand in the shoes of the insolvent insurer for all purposes."  (*Fireman's Fund Ins. Co. v. Workers' Comp. Appeals Bd.* (2010) 189 Cal.App.4th 101, 111–112 (*Fireman's Fund*).)  Nor is it a fund for insurance companies or self-insureds.  (*Id.* at p. 112.)  Instead, it is an insolvency insurer of last resort created to provide "limited financial protection for insureds and the public."  (*Ibid.*)

CIGA's powers, duties, and liabilities are strictly governed by statute, and its coverage is not coextensive with an insolvent insurer's.  (*Denny's Inc. v. Worker's Comp. Appeals Bd.* (2003) 104 Cal.App.4th 1433, 1438 (*Denny's*).)  It is only obligated to pay " 'covered claims' " (Ins. Code, § 1063.2, subd. (a)), as defined in Insurance Code sections 1063.1, subdivision (c) and 1063.2, subdivisions (g) through (h).  Among the prerequisites for CIGA's coverage, the claim must fall "within the coverage of an insurance policy of the insolvent insurer."  (Ins. Code, § 1063.1, subd. (c)(1).)

Two exclusions from statutorily defined "covered claims" are raised here.  First, CIGA "is not liable where a solvent insurer or self-insured employer is jointly and severally liable for the claim under the Labor Code."  (*Fireman's Fund*, *supra*, 189

11

Cal.App.4th at p. 112; see Ins. Code, § 1063.1, subd. (c)(9).)  "When two or more insurers are jointly and severally liable for workers' compensation benefits and one of them becomes insolvent, the policy issued by the solvent insurer constitutes 'other insurance' for purposes of Insurance Code section 1063.1, subdivision (c)(9), which excludes the benefits from coverage by CIGA."  (*California Ins. Guarantee Assn. v. Workers' Comp. Appeals Bd*. (2016) 245 Cal.App.4th 1021, 1027.)  Second, CIGA is not bound by default judgments or stipulated judgments against an insolvent insurer.  (Ins. Code, § 1063.2, subd. (g).)  This limitation protects CIGA from collusion by requiring the validity of a claim to be determined in an adversarial proceeding before being reduced to a judgment that CIGA must honor.  (*Aloha Pacific*, *Inc. v. California Ins. Guarantee Assn.* (2000) 79 Cal.App.4th 297, 309.)

      c.     *Cumulative Versus Specific Injuries*

Central to this coverage dispute is whether Knowles suffered a specific injury or a cumulative one.  The WCA defines a " 'specific' " injury as one caused by a single incident or exposure.  (§ 3208.1, subd (a).)  By contrast, a " 'cumulative' " injury results from repetitive trauma over a period of time.  (§ 3208.1, subd. (b).)  For liability purposes, a specific injury happens on the date of the alleged incident or exposure (§ 5411), meaning the workers' compensation policy or excess policy triggered is the one in effect on that date.  By contrast, a cumulative injury occurs when a worker becomes disabled and should reasonably know the disability was job-related.  (§ 5412.)  Multiple employers can be liable for a cumulative injury.  The WCA extends liability to those employers who employed the injured worker during the year preceding the *earlier* of:

12

(1) her date of injury under section 5412, or (2) the last date the worker was employed in an occupation exposing her to the hazard. (§ 5500.5, subd. (a).)

Knowles filed her first claim for disability benefits on May 12, 2003, but continued to work at full capacity until February 6, 2004. Kemper's excess worker's compensation policy was in effect for the 12-month period beginning July 2002, and Swiss Re's was in effect for the 12-month period beginning July 2003. If Knowles suffered a specific injury on May 6, 2003, Kemper would bear sole responsibility for providing excess insurance coverage to JPA. Once Kemper became insolvent in 2013, insolvency insurer CIGA would be obligated to pay if the remaining statutory requirements were met. (Ins. Code, §§ 1063.1, subd. (c)(1)−(13), 1063.2, subds. (g)−(h).) However, if Knowles suffered a *cumulative* injury, CIGA suggests that the liability period would cover the 12 months preceding February 6, 2004, when she could no longer work at full capacity. In other words, a cumulative injury might trigger coverage under the Swiss Re policy.

2.      *The Superior Court Has Jurisdiction Over CIGA's Action.*

"As a creature of the Legislature, the [WCAB] has no powers beyond those conferred on it." (*Victor Valley Transit Auth. v. Workers' Comp. Appeals Bd.* (2000) 83 Cal.App.4th 1068, 1072 (*Victor Valley*).) The WCA gives the WCAB exclusive jurisdiction over proceedings "[f]or the recovery of [workers'] compensation, or concerning any right or liability arising out of or incidental thereto." (§ 5300, subd. (a).) The superior court and WCAB do not have concurrent jurisdiction over any given action—depending on the injuries claimed, one entity will lack jurisdiction to grant any

13

relief whatsoever. (*La Jolla*, *supra*, 9 Cal.4th at p. 35.) "The only point of concurrent jurisdiction of the two tribunals is jurisdiction to determine jurisdiction; jurisdiction once determined is exclusive, not concurrent." (*Ibid.*) Relying on section 5300, the trial court concluded the WCAB had exclusive jurisdiction to determine that Knowles suffered a cumulative, rather than specific, injury. As we explain, this was incorrect.

"It is by now well established that the WCA's exclusivity provisions preempt not only those causes of action premised on a compensable workplace injury, but also those causes of action premised on injuries ' "collateral to or derivative of" ' such an injury." (*King v. CompPartners, Inc.* (2018) 5 Cal.5th 1039, 1051 (*King*); *Vacanti*, *supra*, 24 Cal.4th at p. 811.) Thus, our first step is to evaluate whether the alleged injury is collateral to or derivative of an injury compensable exclusively under the WCA. If it is, the cause of action *may* be barred; otherwise, it is not barred. (*Vacanti*, at p. 811.) Here, there is no dispute that the characterization of Knowles's injury is collateral to or derivative of injuries compensable under the WCA.

We therefore proceed to the next step to evaluate "whether the alleged acts or motives that establish the elements of the cause of action fall outside the risks encompassed within the compensation bargain." (*Vacanti*, *supra*, 24 Cal.4th at pp. 811−812.) "Where the acts are 'a "normal" part of the employment relationship' [citation], or workers' compensation claims process [citation], or where the motive behind these acts does not violate a 'fundamental policy of this state' [citation], then the cause of action is barred." (*Id.* at p. 812.) By contrast, actions to recover economic or contract damages incurred independent of a workplace injury are not barred. (*Id.* at p. 814.)

14

This second step is where the court erred.  Although perhaps prompted by Knowles's workplace injuries, CIGA's coverage dispute falls "outside the risks encompassed within the compensation bargain."  (*Vacanti*, *supra*, 24 Cal.4th at p. 812.)  The question of whether a workers' compensation claim against a self-insured employer is covered by the employer's *excess* insurance policy is not a " ' "normal" part of the . . . workers' compensation claims process.' "  (*Ibid.*)  CIGA's action can have no legal effect on Knowles's ability to recover workers' compensation.  As a self-insured employer, the onus is on the *District* to provide "compensation" to Knowles.  (§ 3700 [employers must "secure the payment of compensation" by purchasing workers' compensation insurance or self-insuring].)  " 'Compensation' . . . includes every benefit or payment conferred by this division [Workers' Compensation and Insurance] *upon an injured employee* . . . , without regard to negligence."  (§ 3207, italics added.)  As an excess insurer, Kemper was not obligated to provide compensation to Knowles; it merely had a contractual obligation to *indemnify* JPA for certain claims.  CIGA's action only determines who—as between the District/JPA, CIGA, and another excess insurer—bears the ultimate cost of the District's compensation obligation.  Accordingly, it does not fall within the WCAB's exclusive jurisdiction.

Although California courts have not decided this precise question, cases addressing the scope of the WCAB's exclusive jurisdiction are instructive.  Courts have rejected exclusive WCAB jurisdiction where the action does not implicate the payment of benefits to the injured worker.  For instance in *Victor Valley*, *supra*, 83 Cal.App.4th 1068, the WCAB determined that a public transit employee of a joint powers authority was

15

entitled to certain workers' compensation benefits. Afterwards, one city sought

contribution from another municipal member of the authority to recover some of the

benefits paid to the injured worker. The WCAB interpreted the cities' respective rights

and obligations pursuant to their joint powers agreement (*id.* at pp. 1070−1071), but the

appellate court reversed, concluding the WCAB lacked jurisdiction to do so. The cities'

dispute had no bearing on the worker's receipt of benefits, since the prior WCAB award

ensured that *someone* would pay. (*Id.* at pp. 1073, 1076.) Similarly in *United States*

*Fidelity and Guaranty Co. v. Lee Investments*, *LLC* (9th Cir. 2011) 641 F.3d 1126, the

Ninth Circuit applying California law determined that courts, not the WCAB, had

jurisdiction over an insurer's action against an employer to rescind its workers'

compensation insurance policy as void. (*Id.* at p. 1134.) While perhaps prompted by the

workplace accident, the action affected only who had to pay, not whether the employee

could recover workers' compensation. (*Id.* at pp. 1134−1135.)

By contrast, where a dispute implicates a normal part of the workers'

compensation claims process, the WCAB—and not the court—has exclusive jurisdiction.

(See *King*, *supra*, 5 Cal.5th at p. 1053 [worker's action against employer for errors in

utilization review process required under the WCA]; *Vacanti*, *supra*, 24 Cal.4th at p. 820

[medical providers' action against insurer for mishandling workers' compensation lien

claims].) Taken together, the cases support a conclusion here that the superior court has

jurisdiction to make a factual finding necessary to determine excess insurance coverage.

We find further support in a WCAB panel decision, which we consider for its

persuasive value. (See *Cannon v. Industrial Acci. Comm.* (1959) 53 Cal.2d 17, 22.) In

16

*Millman v. Contra Costa County*, the WCAB addressed the flip side of the jurisdictional issue here. ((Dec. 5, 2013, WCK 0005092) 2013 Cal.Wrk.Comp. P.D. Lexis 615 (*Millman*).) A self-insured employer had asked the WCAB to decide whether certain expenses were covered under its excess insurance policy. The WCAB concluded it lacked jurisdiction because "this particular dispute is a contract dispute between an insurer and insured rather than a workers' compensation insurance coverage dispute." (*Id.* at p. *3.) As the panel explained, although many self-insured employers purchase excess insurance, "excess insurance is not a method of securing compensation" pursuant to section 3700. (*Millman*, at p. *4.) Excess insurers do not assume primary and direct liability for the payment of compensation, whereas workers' compensation policies *must* contain a clause to that effect. (*Id.* at pp. *5–*6; Ins. Code, § 11651.) Unlike workers' compensation insurers, excess insurers "may not be substituted for the self-insured employer as the sole entity that may be held liable under Labor Code section 3755." (*Millman*, at p. *6.) Likewise, Department of Insurance "regulations affecting excess insurance are much less extensive" than regulations for primary workers' compensation insurance. (*Ibid.*) Although the panel concluded it lacked jurisdiction, it advised the parties they could "seek declaratory relief in civil court." (*Id.* at p. *7.)

*Millman*'s conclusion makes sense. Under a primary workers' compensation insurance policy, " 'the insurer agrees to pay all workers' compensation and other benefits that the employer must legally provide to covered employees who are occupationally injured or disabled.' " (*La Jolla*, *supra*, 9 Cal.4th at p. 36.) An employer who "secure[s] the payment of compensation" (§ 3700) through workers' compensation insurance is

17

relieved from liability and dismissed from WCAB proceedings once its workers'
compensation carrier assumes liability. (§§ 3755, 3757.)

Excess insurance works differently. An excess workers' compensation policy
*indemnifies* a self-insured employer for claims exceeding a certain retention, thereby
limiting a self-insured's potential exposure. Policy limits to excess coverage do not
expose the injured *worker* to the risk of nonrecovery—"coverage is had through
[employer's] being self-insured. The only risk is to [the employer] as to how much it can
minimize its losses for benefits it is required to pay." (*General Reinsurance Corp. v. St.
Jude Hospital* (2003) 107 Cal.App.4th 1097, 1109.) We agree with *Millman* that a
coverage dispute between a self-insured employer and its excess workers' compensation
carrier is essentially a contract dispute between insurer and insured. (*Millman*, *supra*,
2013 Cal.Wrk.Comp. P.D. Lexis 615 at p. *3.) Such an action falls outside the
compensation bargain and is not a part of the normal workers' compensation claims
process. Accordingly, CIGA's action does not trigger exclusive jurisdiction of the
WCAB pursuant to section 5300.[3]

Consistent with *Millman*, federal courts applying California law have rejected
exclusive WCAB jurisdiction on similar facts. The *BART* cases are particularly helpful.

_____

[3]     Defendants construe *Millman* as addressing a narrow question of whether the
WCAB had jurisdiction to decide whether certain utilization and bill review expenses
were covered by an excess insurance policy. As we read it, both *Millman* and this action
involve which forum has the power to consider an excess coverage dispute. Defendants
contend *Millman* involved a "coverage dispute" whereas CIGA attempts to recharacterize
Knowles's injury. But CIGA's action *is* a coverage dispute, irrespective of the factual
inquiry its resolution necessarily entails.

18

A Bay Area Rapid Transit (BART) employee filed a multiple myeloma workers' compensation claim before the WCAB. As a self-insured employer, BART had purchased excess insurance from General Reinsurance Corporation (GRC) to cover workers' compensation claims exceeding a retention limit. (*BART I*, *supra*, 111 F.Supp.3d at pp. 1059−1060.) The parties initially disputed the employee's injury date, but ultimately signed a Compromise and Release stipulating to a cumulative injury between 1990 and 1991. This injury period triggered coverage under GRC's policy. (*Id.* at p. 1062.) GRC initially made payments but then stopped and sought reimbursement. (*Id.* at p. 1063.) BART then sued GRC for breach of contract. In phase one of trial, the court had to decide whether it had jurisdiction to make a factual finding as to the employee's date of injury inconsistent with the WCAB and, if it did, whether GRC was nevertheless bound by the WCAB's determination under principles of estoppel, waiver, or laches. (*Id.* at p. 1064.)

Citing *Millman*, the district court concluded it had jurisdiction to revisit the date-of-injury determination. Section 5300's exclusivity bar was "limited to claims involving compensation to the employee." (*BART I*, *supra*, 111 F.Supp.3d at p. 1065.) An excess insurance policy was not a workers' compensation policy and therefore not subject to the workers' compensation scheme. (*Ibid.*) The possibility that the court might make a finding inconsistent with one already made by the WCAB did not deprive it of jurisdiction. (*Ibid.*) It was not reviewing any decision of the WCAB, and its ruling would not affect the WCAB's decision that BART, as a self-insured employer, owed compensation to its employee. (*Ibid.*) "Put simply, regardless of the case's outcome,

19

BART will remain liable to [its employee] as a self-insured employer even if it is determined that General Reinsurance is not the proper excess carrier because the date of injury fell outside of the Policy period." (*Ibid.*)

Next, the district court concluded that GRC was not otherwise bound by the WCAB's date of injury determination under principles of collateral estoppel, equitable estoppel, waiver, or laches. (*BART I*, *supra*, 111 F.Supp.3d at p. 1067.) Collateral estoppel might have applied had GRC been joined in the WCAB action, but absent joinder it lacked privity with BART so as to be bound. (*Id.* at pp. 1068−1069, 1074.)

The Ninth Circuit affirmed.[4] As it explained, excess insurer GRC did not challenge BART's liability as a self-insured employer to its injured worker. Nor did it challenge the amount of the award against BART. "Instead, GRC seeks to litigate a factual question that goes to coverage under its policy. It is not barred from doing so by the stipulation between BART and its employee or by the WCAB's finding in approving that agreement." (*Bart II*, *supra*, 726 F.App'x. at p. 564.) Moreover, GRC could not otherwise be bound where it was not notified of the underlying proceeding until one week *after* BART's compromise and release had been approved by the WCAB. (*Ibid.*)

*BART I* and *BART II* stand for the notion that a trial court has jurisdiction to make a factual finding underlying excess workers' compensation coverage even if that finding is inconsistent with one made or approved by the WCAB. Central to this result is the

---

4       Although nonpublished and nonprecedential under Ninth Circuit rules (U.S. Cir. Ct. Rules (9th Cir.), rule 36-3(a)), we may rely on *BART II* as persuasive authority. (See *Pacific Shore Funding v. Lozo* (2006) 138 Cal.App.4th 1342, 1352, fn. 6.)

20

nature of excess workers' compensation insurance, compared to primary workers' compensation insurance policies.

Although the summary judgment motions in this case did not squarely address collateral estoppel, the *BART* cases further stand for the notion that issue preclusion does not apply where an excess insurer takes no part in WCAB proceedings. Defendants repeatedly assert that Kemper "authorized" or "approved" their stipulation before the WCAB. As support, they cite solely to paragraph No. 8 of the declaration of JPA claims administrator Tammy Le: "On or about June 2, 2011, Kemper authorized settlement of the Claim pursuant to the proposed stipulation and award for an injury occurring on May 6, 2003." But CIGA objected to this evidence on foundation and lack-of-personal-knowledge grounds, the court *sustained* the objection, and defendants do not challenge the court's evidentiary ruling. In short, here as in *BART*, there is no *competent* evidence that the excess insurer participated in the WCAB action so as to be bound by stipulated findings approved in an Award.

We agree with *BART I* that successive litigation of foundational facts concerning a worker's injury is "perhaps not optimal, and a situation to be avoided if possible." (*BART I*, *supra*, 111 F.Supp.3d at p. 1065.) But under the present circumstances, the trial court does not lack jurisdiction to decide the factual question underlying the excess coverage

21

dispute, even if it reaches a finding contrary to the WCAB. (*Ibid.*)[5] Contrary to defendants' strenuous objection, CIGA's requested relief would not "modify the WCAB award" even if the court finds that Knowles suffered a cumulative injury.

*Liberty*, *supra*, 339 F.Supp.3d 1019, a federal case involving *respondent JPA*, also supports our jurisdictional conclusion. During a two-year span, JPA purchased excess insurance first from Liberty Insurance Corporation and then from Wesco Insurance Company. (*Id.* at p. 1024.) Two school district employees had cumulative injuries spanning both coverage periods, each with their last date of exposure after Liberty's policy ended. (*Id.* at pp. 1024−1025.) Liberty and Wesco initially agreed to allocate costs. Then Liberty stopped paying, saying its insurance policy excluded coverage where the workers' last exposure occurred outside the policy period. (*Id.* at pp. 1025−1026.) A contract dispute ensued between JPA, Liberty, and Wesco. (*Ibid.*) At summary judgment, Liberty pointed to its policy exclusion while Wesco argued Liberty's interpretation of its policy conflicted with statutory liability for cumulative injury claims under the WCA (§ 5500.5). (*Liberty*, at pp. 1026−1027.) The court held in Liberty's favor. Citing *BART I* and *Millman*, it reasoned, "an excess policy is not a workers' compensation policy and thus the provisions of Division Four [of the Labor Code]

---

5    CIGA argues the WCAB approved the parties' stipulation but "did not make a factual determination based on the evidence that [Knowles] suffered a specific injury." We assume without deciding that there is no meaningful difference between a factual *determination* made by the WCAB and a WCAB Award based on the parties' stipulations of fact.

22

regulating workers' compensation policies—such as Section 5500.5—do not apply." (*Id.* at p. 1029.)

As *Liberty* and *BART I* explain, there is an important distinction between employers who purchase *primary* workers' compensation insurance and self-insured employers who purchase *excess* workers' compensation insurance. "As the self-insurer, the JPA is the party required to 'place itself in the position of a private insurer.' [Citation.] The excess insurer, on the other hand, does not pay *any* worker's compensation benefits but rather reimburses the JPA after the JPA has paid those benefits." (*Liberty*, *supra*, 339 F.Supp.3d at p. 1029.) Excess insurance is optional under the workers' compensation scheme. (§ 3702.8, subd. (c).) Whether Kemper's policy covers the claim does not affect the WCAB's determination that Knowles is entitled to compensation from the District for workplace injury, or the amount awarded for her permanent and temporary disabilities. Knowles will be compensated the same amount even if the court finds in this action that she suffered a cumulative injury rather than a specific one. (*BART I*, *supra*, 111 F.Supp.3d at p. 1065.)

The trial court did not consider the nature of excess coverage when it reached a contrary result. Citing *Western Growers*, *Ins. Co. v. Workers' Comp. Appeals Bd.* (1993) 16 Cal.App.4th 227, 234, the court believed injury characterization fell squarely within the WCAB's expertise. But the question of exclusive jurisdiction does not turn on the extent to which a particular factual inquiry lies within or outside of the WCAB's expertise. Instead it depends on whether the claim being asserted implicates "the risks encompassed within the compensation bargain." (*Vacanti*, *supra*, 24 Cal.4th at p. 812.)

23

Depending on the context, either the WCAB or the superior court is fully capable of determining whether an injury is specific or cumulative. Thus, in reviewing by writ a WCAB decision, it is hardly surprising that the court in *Western Growers* would explain that the nature of an injury—whether it is specific or cumulative—was a question of fact for the WCAB to resolve *in a dispute between the employee and primary insurer*. (*Western Growers*, at pp. 234–235.) The case does not stand for the proposition that the WCAB has exclusive jurisdiction to decide the nature of an injury in every conceivable context in which that factual question may arise.

The trial court further reasoned that *BART I* permitted litigation of the worker's injury date, not injury type. But there is little distinction between the "date of injury" determination in *BART I* and the "type of injury" determination here. If the court were to decide that Knowles suffered a cumulative injury, that would determine the injury period and, in turn, the applicable excess insurance policy for purposes of evaluating CIGA's coverage obligation. Whereas in *BART I* the injury date directly determined which excess policy applied, here the injury type determines the injury date, which in turn determines which excess policy applies. The effect is the same.

We likewise reject defendants' argument that the *BART I* court "was merely completing the equation" by deciding a question left open by the WCAB. Both this action and *BART I* address whether a court has the power to decide a factual issue necessary to determine excess workers' compensation insurance coverage, even if its finding differs from the WCAB's. During the WCAB proceedings in *BART I*, the parties stipulated to an injury date that triggered GRC's excess coverage, but the court was not

24

without jurisdiction to find an injury date *different* from that approved by the WCAB. (*BART I*, *supra*, 111 F.Supp.3d at p. 1065.)  A similar conclusion follows here.

Nor are we persuaded by the trial court's reasoning that "*BART* was a coverage dispute based on the terms of the policy" whereas "CIGA's obligations are based on statute."  A prerequisite for coverage under the CIGA statute is a determination that the obligation is covered by the insolvent insurer's policy.  (Ins. Code, § 1063.1, subd. (c)(1)(A).)  CIGA disputes the extent of Kemper's coverage obligation.  It asserts that Knowles suffered a cumulative injury, triggering coverage under Swiss Re's policy.  The factual prerequisite for excess coverage here is analogous to that in *BART I*.

In short, CIGA's action for declaratory relief is not subject to the WCA's exclusivity bar.  The WCAB's exclusive jurisdiction over actions involving "the recovery of compensation, or concerning any right or liability arising out of or incidental thereto" (§ 5300, subd. (a)) does not extend to contract-based disputes between a self-insured employer and its excess carrier (or that carrier's insolvency insurer).  The court is not without jurisdiction to make a factual determination that Knowles suffered a cumulative injury, even if its finding contradicts a stipulated fact approved by the WCAB.

Defendants' policy arguments do not compel a different result.  First, they claim that allowing CIGA to litigate Knowles's injury type would result in inconsistent rulings between the WCAB and the superior court and interfere with Knowles's claim rights.  But as noted, Knowles is entitled to compensation from the District, a lawfully self-insured employer, irrespective of defendants' indemnification rights.  Second, they argue their WCAB stipulation might prevent recovery from other excess insurers.  Accepting this

premise for the sake of argument, defendants brought this predicament on themselves by stipulating to a specific injury before the WCAB. The possibility that their improvidence *might* leave them without other excess insurance coverage does not change the legal parameters of CIGA's statutory obligation. (See *Parkwoods v. Community Assn. v. Cal. Ins. Guarantee Assn.* (2006) 141 Cal.App.4th 1362, 1368 [insured could not "bootstrap its claim against CIGA by releasing its right to recover under an available policy and claiming that as a result there is no other coverage"]; *Denny's*, *supra*, 104 Cal.App.4th at p. 1442 [CIGA was not created to protect self-insured employers].)

Finally, defendants suggest that allowing CIGA to litigate whether Knowles suffered a cumulative injury will "overrun" courts with coverage disputes by CIGA, "even where coverage was never at issue and payments [by the insolvent insurer] had previously been made on claims." Defendants overstate the risk—our ruling only implicates CIGA's coverage as to *excess* workers' compensation carriers. And collateral estoppel could apply where a self-insured employer *joins* its excess insurer or CIGA in WCAB proceedings. (*BART I*, *supra*, 111 F.Supp.3d at p. 1074.) We share the *BART I* court's view that although perhaps not optimal, the superior court is not without jurisdiction to decide a factual issue underpinning CIGA's coverage obligation.

3.      *Effect of Jurisdictional Ruling*

The trial court concluded it lacked jurisdiction to find Knowles suffered a cumulative injury. Because it believed exclusive jurisdiction to make that determination rested with the WCAB, it entered judgment in defendants' favor on the cross-complaint and ordered CIGA to reimburse defendants $129,836.91 plus costs.

26

CIGA argues this was error. Even if the court lacked jurisdiction to find Knowles suffered a cumulative injury, CIGA argues defendants' reimbursement request was not a "covered claim" because: (1) it is not bound by a stipulated judgment against Kemper (Ins. Code, § 1063.2, subd. (g)); (2) "other insurance" was available from excess insurer Swiss Re (Ins. Code, § 1063.1, subd. (c)(9)); and (3) there has never been a determination of coverage under Kemper's policy (Ins. Code, § 1063.1, subd. (c)(1)).

Given our jurisdictional ruling, we do not reach these contentions.[6] Defendants moved for summary judgment; CIGA did not. Our conclusion that the court has jurisdiction to make a factual determination regarding injury type leaves triable issues to resolve. The parties may proceed to litigate whether Knowles suffered a specific or cumulative injury, and the court may make a factual finding on this question to reach a final coverage determination.

---

[6] Nor do we reach CIGA's arguments that the superior court did not comply with Code of Civil Procedure, section 437c, subdivision (g) or provide a sufficient statement of reason when it entered judgment for defendants on their cross-complaint for reimbursement.

DISPOSITION

The judgment is reversed. The matter is remanded to the trial court with directions to vacate its order granting summary judgment and enter a new order denying defendants' motions on both the complaint and cross-complaint. CIGA is entitled to recover its costs on appeal.

DATO, J.

WE CONCUR:

McCONNELL, P. J.

O'ROURKE, J.

28